## Greene v. Cohen.

(Decided June 14, 1918.)

### Appeal from Franklin Circuit Court.

1. Officers—Increase or Reduction of Compensation.—Section 235 of the Constitution does not prohibit the legislature from changing the duties of public officers, either by adding to them or taking from them; it does, however, forbid the changing of their compensation.

2. Officers—Increase or Reduction of Compensation.—If the compensation of a public officer is a salary, the salary must remain the same throughout that officer's term, although the scope of his official duties may have been increased or lessened.

3. Officers—Ex-officio Service.—No compensation can lawfully be paid for any ex-officio service rendered by any public officer.

4. Officers—Commissioner of Agriculture—Increase of Salary—Invalid Act.—The act approved March 20, 1918 (Acts 1918, p. 361) violates section 235 of the Constitution insofar as it attempts to raise the salary of the Commissioner of Agriculture, Labor and Statistics, during the term for which he was elected.

CHARLES H. MORRIS, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellant.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This case arises under section 235 of the Kentucky Constitution, which reads as follows:

"The salaries of public officers shall not be changed during the terms for which they were elected; but it shall be the duty of the General Assembly to regulate, by a general law, in what cases and what deductions shall be made for neglect of official duties. This section shall apply to members of the General Assembly also."

The appellant, Robert L. Greene, is Auditor of Public Accounts of the State of Kentucky, and the ap-

pellee, Matt S. Cohen, is its Commissioner of Agriculture, Labor and Statistics. His term of four years began on the first Monday in January, 1916; the duties of his office, prior to 1918, were fixed by chapter 4 of the Kentucky Statutes.

Article 2 of chapter 5 of the Kentucky Statutes upon the subject of "Animals" related to infectious diseases of cattle and hogs, and their treatment; and for the purpose of carrying out the provisions of that statute the State Live Stock Sanitary Board had been created, consisting of the Commissioner of Agriculture, Labor and Statistics, ex-officio chairman, the head of the Division of Animal Husbandry of the Kentucky Experiment Station, ex-officio member, and four members of the State Board of Agriculture. Ky. Sts. sec. 63a, subsec. 11.

By an act approved March 20, 1918, entitled "An act to suppress, control and eradicate communicable diseases in live stock, to provide the necessary officers and define their duties and powers, and to appropriate funds necessary for its enforcement, and repealing section 63a of article 2, chapter 5, Carroll's 1915 edition, Kentucky Statutes," the scope of the office and the duties of the commissioner were somewhat extended to accomplish the enlarged purposes contemplated by the new statute. Acts 1918, p. 361.

This new act of 1918 covered, in a more elaborate manner, the same subjects that were covered by the act which it repealed.

Section 12 of the new act of 1918 contains this provision:

"That, to carry out the provisions of this act, there is hereby constituted the State Live Stock Sanitary Board of Kentucky, which shall consist of the Commissioner of Agriculture, Labor and Statistics, ex-officio chairman, the Director of the Kentucky Agricultural Experiment Station, ex-officio member and vice chairman, the Head of the Division of Animal Husbandry of the Kentucky Agricultural Experiment Station, ex-officio member, and four members of the State Board of Agriculture, two from each of the dominant political parties, to be selected annually by the said State Board of Agriculture. The members of the board shall serve without salary, but shall receive ten dollars per diem for each day the board is actually in session, together with all the necessary traveling and other expenses incurred

while engaged in the discharge of their official duties. The chairman of the board shall receive for his services, as such, a salary of one thousand five hundred dollars per annum and the necessary traveling and other expenses incurred while engaged in the discharge of his official duties. The chairman of the board may, and at the request of four members shall, call the meetings of the board at such times and places as may be deemed necessary for the best interests of the live stock industry.''

Cohen made out and presented to the auditor, an account for his monthly salary, and the auditor having refused to issue his warrant therefor, upon the ground that the act of 1918 violated section 235 of the Constitution when it attempted to raise appellee's salary during his term of office, Cohen instituted this action for a mandamus to require him to do so. The auditor demurred to the petition, and answered, admitting all the allegations of the petition except that paragraph thereof which alleged that the duties required of the Commissioner of Agriculture, Labor and Statistics, by the act of 1918, are wholly independent of and disconnected with the duties of the plaintiff as Commissioner of Agriculture, Labor and Statistics. On the contrary the answer alleged that Cohen is required to perform the duties imposed upon him by the act of 1918 by virtue of his office of Commissioner of Agriculture, Labor and Statistics.

The circuit court overruled the defendant's demurrer to the petition; sustained the plaintiff's demurrer to the answer; and the defendant having declined to further plead it entered a judgment requiring him to issue his warrant in favor of the plaintiff for the salary claimed under the act. From that judgment the auditor prosecutes this appeal.

Appellee insists that this case does not present an increase of salary which is prohibited by section 235 of the Constitution, because, as he claims, the act of 1918 merely provides compensation for the new and numerously increased duties imposed upon him as chairman of the State Live Stock Sanitary Board, which were not provided for or mentioned in the old law upon the subject. It is pointed out that the act of 1918 imposes upon the State Live Stock Sanitary Board many new duties that were not required of him formerly, including the duty to appoint a deputy state veterinarian, four assistant state veterinarians, one special veterinarian in tuber-

culosis work, and twelve emergency men scattered in as many districts in the state to work in connection with six federal employees supplied by the Bureau of Animal Industry. The chairman also is required to issue licenses to vendors of hog cholera virus in the state, to approve appraisals of diseased animals and pay indemnity for their destruction; he is given the general supervision of, and held accountable for, the entire annual appropriation of $28,190.00 and all monies received from licenses and forfeitures; to approve the appointment of county live stock inspectors in each county in the state; and, to supervise the purchase of necessary supplies and equipment in carrying out the provisions of the act.

In support of his contention that the act of 1918 is constitutional, appellee relies principally upon the opinion of this court in James, Auditor v. Cammack, 139 Ky. 223; while the Commonwealth asks a reversal upon the authority of James, Auditor v. Duffy, 140 Ky. 604.

In speaking in a general way of section 235 of the Constitution, this court, in James, Auditor v. Cammack, *supra,* said:

"The second objection, that the act is inimical to section 235 of the Constitution, in that it increases the compensation of the officers after their election, is more serious. Undoubtedly, the provision in the Constitution against the changing of the salary of public officers after their election is mandatory as well as wise, and under no circumstances should the courts suffer or permit any consideration to induce them either to minimize or abrogate the fundamental law of the Commonwealth."

It is there further said that the provisions of the Constitution should not, under any circumstances, be treated lightly or irreverently. And, in the Duffy case, it was made clear that a public official has no contract with the state or county to perform all the duties imposed upon the office at the time of his election; that the duties of his office may be diminished without diminishing his salary, or that the duties may be increased without increasing his salary; and that he must, while holding a public office, discharge all of his duties, even though no compensation therefor be provided.

In James, Auditor v. Duffy, *supra,* the action was brought by Duffy, a county attorney, against the auditor, to recover a percentage compensation allowed county attorneys by the act of 1906 for services rendered in col-

lecting taxes upon omitted property, and the auditor defended upon the ground that the act in that respect violated the Constitution by attempting to change the compensation of a county attorney during his term of office. In 1905 the county attorney was paid a salary fixed by the fiscal court, and the act of 1906 allowed him, in addition, fifteen per centum of omitted taxes assessed in suits in which he appeared.

In denying Duffy's right to recover the extra compensation allowed by the act of 1906, this court said:

"The question is, is that a change of his compensation during his term of office?

"That it increases his compensation is beyond dispute. But it is argued it does not change it, because it is for new duties imposed, and therefore is a fixing of compensation for those duties alone. The fact still remains that the official receives more money as compensation for his official duties than he did before. In fact we do not regard the statute of 1906 as changing or adding to the duties required of the county attorneys. But let that be as it may, it is not material. The Constitution does not prohibit the legislature from changing the duties of public officers—either adding to them or taking from them, but it does forbid changing their compensation. By compensation is meant pay for doing all that may be required of the official. (Bright v. Stone, Auditor, 20 Rep. 817, 43 S. W. 207.) If the compensation is a salary, the salary must remain the same throughout that official's term, whether or not the scope of his official duties have been increased or lessened. If the compensation be fees, then the same scale of fees must prevail for the same services, and if new duties are imposed, with fees attached, the incumbent when the change is made cannot charge for the new duties. The section of the Constitution is inexorable. It admits of no exceptions. It affords no opportunity for evasion by the legislature or other body. Its purpose cannot be defeated by indirection. It is a complete barrier to change of compensation whether salary, scale of fees, or both. It operates upon the office and the official—not upon his duties."

Turning now to the opinion in James, Auditor v. Cammack, *supra*, relied upon by the appellee to support the judgment of the trial court, it will be observed that that case is in principle radically different from the Duffy case and from the case at bar.

The Cammack case arose under an act of the General Assembly passed in 1910, authorizing the regular circuit judges (except in those districts embraced in a city of either the first or second class and wherein a court of continuous session was held), to act as special judges of the circuit courts of the Commonwealth for which additional service each judge was to receive an annual salary of $1,200.00 payable out of the state treasury. The auditor contended that the act did not apply to the circuit judges in office at the time of its passage, because to so hold would work a violation of section 235 of the Constitution.

This court, however, sustained the statute, holding that the duties imposed upon the regular circuit judges by the act of 1910 were new and different duties that were not formerly required of them; and that these new duties were to be performed by the individual and outside of the district of the regular circuit judge and outside of the jurisdiction of the courts presided over by him, as fixed by the Constitution. That this is the ground upon which the decision in the Cammack case is based, appears from the following excerpt from the opinion in that case:

"It is clear that there may be duties imposed upon the judge as an individual which do not belong to, or constitute a part of, the jurisdiction of his court, and which may not be intended by the legislature to be a part of it; and to this class clearly belong the duties of special judge. It is manifestly not a part of the regular jurisdiction of one circuit court that its judge should hold special court in a different district when the occasion for the discharge of such duties arises. So that, clearly, it is not a part of the jurisdiction of any circuit court of this Commonwealth that its judge shall discharge the duties of special judge in any other district; and although it may be within the competency of the legislature to impose the duties of holding special court upon the regular judges, those duties are not a part of the regular jurisdiction of their courts, but entirely outside of that jurisdiction. They are duties which the legislature can either impose upon the regular circuit judge of the state or not, as it sees proper. They are duties which the legislature can with equal propriety impose, or authorize to be imposed, upon any other members of the bar of the state qualified to hold circuit court. A

special judge need not be a regular circuit judge; he may be any person authorized by law to preside as special judge.''

Again, in that opinion, the court further said:

''The duties of a special judge are performed outside of the regular judge's district, and they have no legal connection with his regular duties. The duties of a special judge by the act in question are imposed upon the judge as an individual, and are not a part of the duties of his office. To remunerate him for these duties is not an increase of the salary of his office within the meaning of the constitutional inhibition. The legislature may add them or not, as it pleases, and afterwards, if it sees proper, may repeal the act and deprive the judges of the opportunity to perform the extra labor and receive the extra salary without in anywise changing their compensation within the meaning of section 235. So far as the performance of the duties of special judge are concerned, the regular judges stand as any other qualified individual. They may be appointed by the legislative power or not, as the General Assembly deems proper.''

It will thus be seen that the reason for the rule in the Cammack case not only clearly distinguishes it from the Duffy case, but makes it inapplicable to the case at bar.

As we understand this case, it comes clearly within the rule laid down in the Duffy case which prohibits the legislature from changing the salary of the appellee, or any public officer, during his term of office. Section 12 of the act of 1918, above quoted, like the former provision of section 63a of article 2, chapter 5, of the Kentucky Statutes, constitutes the State Live Stock Sanitary Board, of which the Commissioner of Agriculture, Labor and Statistics, by virtue of his office, is chairman. That was the same position he held under the old statute, although we do not consider that fact material under the broad language of the Constitution. As above pointed out in the Cammack case, while the legislature has the right to change the duties of the office, it could not change the compensation of the officer during his term.

The right to impose new ex-officio duties upon a public officer, without compensation, is recognized by section 1749, subsection 5 of the Kentucky Statutes, which reads as follows:

''No fee bill shall be made out, or compensation allowed hereafter, for any ex-officio services rendered or to be rendered by any officer.''

If, therefore, these new duties had been imposed upon the appellee for the first time by the act of 1918, without any additional compensation being provided therefor, can it be doubted that appellee would have been required to discharge the new duties free of compensation? Clearly not. Morgantown Bank v. Johnson, 108 Ky. 507; Mitchell v. Henry County, 124 Ky. 833; James, Auditor v. Duffy, *supra;* Owen Co. v. Walker, 141 Ky. 516.

It follows, therefore, that the question of the comparative duties of appellee under the old and under the new statute can have no bearing upon the question. He cannot measure his increased new duties against his former duties for the purpose of claiming increased compensation any more than the state can measure his reduced new duties against his former greater duties for the purpose of diminishing his compensation, during his term of office. This question has been before this court so many times, it will be sufficient to notice only a few of the cases supporting the rule above announced.

In Board of Education of Lexington v. Moore, 114 Ky. 640, the salary of the treasurer of the city of Lexington had been fixed at $1,800.00 per annum by a city ordinance. Later, and during the term of office of Moses Kaufman as city treasurer, the board of education undertook to increase the compensation of the city treasurer, who was by law also required to be treasurer of the board of education, in the sum of $200.00 per annum. This court, however, held that the treasurer could not thus have his compensation indirectly increased during the term of his office.

In McCracken County v. Reed, 125 Ky. 420, the court had before it the application of a statute authorizing certain cities of the second class to supplement the salary of their respective circuit court judges. The fiscal court of McCracken county undertook to increase the compensation of Judge Reed during his term of office; but this court held that the action of the fiscal court in this respect violated the Constitution, since the legislature could not directly or indirectly accomplish a change in the compensation of an officer during his term of office. In that opinion it was said:

"What the legislature cannot do directly it cannot do indirectly through the agency of one of its creations. The purpose of the constitutional provision was to se-

cure to the public officers a certain fixed compensation, so that they would be independent of the legislature. It was also designed to prevent official power and position from being used by the officer to increase the emoluments of the officer after he secured the office. The constitutional provision would be rendered entirely nugatory, and the door would be opened to every evil which the Constitution intended to prevent, if the legislature, instead of increasing directly the salaries of public officials after their election, could authorize the fiscal courts or other municipal authorities to make such increase. In fact, this construction of the Constitution would tend to increase the evils which this provision of the Constitution was intended to prevent. The act is not invalid. It is simply inoperative as to circuit judges elected before its enactment or before the annual additional compensation provided for by the act is fixed by the county or the city authorities.''

To the same effect, see Commonwealth v. Addams, Clerk, 95 Ky. 588; Bright v. Stone, Auditor, 20 Ky. L. R. 817, 43 S. W. 207; Commonwealth v. Carter, 21 Ky. L. R. 1509, 55 S. W 701; McNew, Judge v. Commonwealth, 29 Ky. L. R. 540, 93 S. W. 1047; Frizzell v. Holmes, 131 Ky. 373; Clark v. Logan County, 138 Ky. 676; Fiscal Court of Mercer County v. Gibbs, 166 Ky. 434; Beauchamp v. Snider, Judge, 170 Ky. 220; Anderson v. Burton, 174 Ky. 456.

The reasoning found in the extract last above quoted applies with equal force to the case under consideration.

There is no substance in the contention that the duties imposed upon appellee by the act of 1918 are different in character from his duties under the former statute, and that the case falls within the class of cases represented by the Cammack case. The distinguishing feature of that case, and others of the same class, like Slayton v. Rogers, 128 Ky. 106; Flowers v. Logan County, 138 Ky. 59, and Thomas v. O'Brien, 138 Ky. 774, has been pointed out. There the additional compensation was given the officer for services which were entirely different from his official duties. But here the new duties are imposed upon appellee by virtue of his office. At most appellee's duties are only increased; but this, as we have seen, did not, of itself, entitle him to an increased compensation, and did not interfere with the operation of section 235 of the Constitution.

No one will claim that the legislature could have directly increased the appellee's compensation during his term of office by passing an act increasing his salary as Commissioner of Agriculture, Labor and Statistics to the extent of $1,500.00 or any sum whatever; and if this cannot be done directly, the reason for refusing to permit a violation of the Constitution by indirection, is even more impelling.

If the act now before us, in so far as it increases the salary of the appellee, should be sustained, the prohibition contained in section 235 of the Constitution amounts to nothing; and all the legislature would hereafter have to do to successfully evade it would be to add a few simple duties to the office and increase the compensation to suit the pleasure of the legislature; for if the legislature has the right to make any increase in salary, the size of it is of no concern to the courts. The purpose of the constitutional inhibition was to prevent precisely what was here indirectly attempted.

We are clearly of opinion the circuit court erred in overruling the demurrer to the petition.

Judgment reversed. The whole court sitting.