Cawood SMITH, etc., Appellant,

v.

HARLAN COUNTY FISCAL COURT, etc., et al., Appellees.

Court of Appeals of Kentucky.

June 19, 1959.

Concurring Opinion July 6, 1959.
As Modified on Denial of Rehearing
Dec. 11, 1959.

**62**

———◆———

Cawood Smith, County Attorney, Harlan, for appellant.

Garrett M. Castle, James S. Greene, Jr., Glenn L. Greene, Jr., Harlan, for appellees.

D. G. Boleyn, Hazard, amicus curiae.

MONTGOMERY, Chief Justice.

The validity and effect of KRS 64.255, usually referred to as the Magistrates' Pay Act, are involved on this appeal. The lower court held that the Act was not repugnant to Sections 161 and 235 of the Kentucky Constitution. These questions have been considered by two other circuit courts, the appeals from which are controlled by this opinion. See Kitchens v. Milliken, Ky., 329 S.W.2d 68, and Crafton v. Bratcher, Ky., 329 S.W.2d 70.

The Legislature of Kentucky enacted Senate Bill 229 at its 1958 regular session. This Act became effective March 28, 1958, as KRS 64.255, and is as follows:

"(1) In enacting legislation relating to justices of the peace, it is the intention of the General Assembly to enable justices of the peace in counties having a population of less than 250,000 to exercise criminal jurisdiction as set out in KRS 25.010, and to provide for compensation for their performance of the new duties thereby imposed upon them.

"(2) In counties having a population of less than 250,000 each justice of the peace may be exclusively compensated for the performance of the duties of his office, in so far as they relate to the trial or decision of criminal cases, by a salary not to exceed $1,200 per annum for counties having a population of 30,000 or less; $2,400 per annum for counties having a population in excess of 30,000, and not exceeding 60,000; $3,600 per annum for counties having a population in excess of 60,000 and not exceeding 250,000. The fiscal court of each county is authorized to fix salaries pursuant to the above restrictions. Notwithstanding provisions of KRS 64.530, salaries for incumbent justices of the peace shall be set as soon as may be practical after passage of this section. Salaries shall be paid, in equal monthly installments, out of the county treasury.

"(3) All moneys received or collected in criminal cases on account of or resulting from the performance of the duties or the exercise of the powers incident to the office of justice of the peace, shall be reported and paid in full to the circuit clerk of the county, on or before the tenth of each succeeding month, for proper distribution to the county and state."

The eight justices of the peace of the Harlan County Fiscal Court, appellees, on April 9, 1958, at a regular meeting, unanimously adopted an order fixing "the salaries of the Justices of the Peace * * * at $250.00 per month, beginning upon the effective date of the said Act, and ending with the term of the present elected Justices of the Peace, or their successors in office during said term." The terms of office of the justices began on the first Monday in January 1958. It is recited in the order that it was made pursuant to the statute in question.

Appellant contends, in essence, that the judgment of the lower court holding valid the fiscal court order is erroneous because

the statute is unconstitutional and the order is invalid as being repugnant to Sections 161 and 235 of the Kentucky Constitution and the duties imposed on the office of justice of the peace by the statute are not foreign or beyond the scope of the office and do not authorize change in compensation of the officer after his election or during his term.

The legislation in question and the resulting litigation are an outgrowth of the decision in Roberts v. Noel, Ky., 296 S.W. 2d 745, 749. Formerly, justices of the peace in counties having less than 250,000 population were compensated for their services in the trial of criminal cases by the collection of fees authorized by statute. KRS 64.240. In holding that a justice of the peace could not try a criminal case upon proper objection having been made, even though the fee was waived, it was recognized in the Roberts opinion: "While the legislature clearly would have authority to require justices of the peace to try criminal cases without compensation, we think it is equally clear that the legislature did not intend that such a burden be placed upon the justices of the peace in Kentucky. Applying the standard rule of severability, we think the legislature would not have passed the statutes conferring criminal jurisdiction upon justices of the peace without the accompanying provisions for compensation. A system under which the justices would serve without compensation could give rise to a number of evils, such as fee-splitting, and would not be conducive to fair administration of justice."

The opinion ended with the conclusion that such justices of the peace have no jurisdiction to try criminal cases until some method of compensation is provided by statute. Confusion has arisen as to the meaning of this statement, whether the failure to provide a method of compensation is a personal disqualification which may be raised by proper objection or is an absolute deprivation of jurisdiction so that a justice of the peace cannot try any criminal case.

The exact meaning is important here as to whether the jurisdiction of the justices continued or not and whether if continued the justice may be prohibited from exercising his duty upon proper objection because of a failure to provide a method of compensation.

It is the view of the Court that the jurisdiction of the justice of the peace was unaffected by the decision in Roberts v. Noel; that the jurisdiction continued; that the duty to try criminal cases was a continuing duty rather than a new one; that the justice was under a personal disqualification which might be raised by proper objection; and that the effect of the decision was to hold unconstitutional so much of the statute that authorized compensation by fees for trying criminal cases. KRS 64.240. A like construction was placed on a similar statute authorizing the payment of fees to county judges in criminal cases. Perry County v. Smith, 278 Ky. 321, 128 S.W.2d 751. The language in the Roberts opinion recognized that the decision did not affect the jurisdiction of justices of the peace in examining trials in criminal cases or their jurisdiction in civil cases. To have held that the justices of the peace in counties of less than 250,000 population were deprived of part of their jurisdiction would have presented a serious question as to the jurisdiction of justices of the peace in counties of more than 250,000 population, in view of the constitutional provision that "the jurisdiction of the Justices of the Peace * * * shall be equal and uniform throughout the State." Kentucky Constitution, Section 142; KRS 25.010.

Further, the order on the petition for rehearing in the Roberts case recognized the continued need for the use of justices of the peace in the trial of misdemeanor cases in the administration of justice; that remedial legislation might not be attainable during the remainder of the terms of the justices then in office; and that the rights of the accused to a fair trial before an impartial court during the

transition period would be protected by a giving of notice before trial by the justice of the peace of the right so to demand. It was ordered that the mandate on the opinion in Roberts v. Noel be withheld from May 4, 1956, until the expiration of the current terms of office of the justices on January 5, 1958. From this, the conclusion is that the jurisdiction and duty of justices of the peace to try criminal cases continued and that the justices of the peace entering upon the performance of the duties of their office on the first Monday in January 1958 were so empowered, subject to a personal disqualification because of the lack of a proper method of compensation. It was to remove this disqualification that KRS 64.255 was enacted. The new statute authorized a method of compensation for the performance of an old duty by justices of the peace; that is, the exercise of the jurisdiction set out in KRS 25.010, as specifically recognized in KRS 64.255.

■ The description in subsection (1) of KRS 64.255 of the duties as "new" is considered as surplusage since it is concluded that the duties are old and continuing and since the performance of such duties is traditionally compensated. See Hamlet v. Davis, 244 Ky. 727, 51 S.W.2d 963, for a historical treatment of the powers and duties of the office of justice of the peace. Appellant recognizes in his brief that the duty is not a new one.

The argument is made that KRS 64.255 is unconstitutional. Actually, it is the application of the statute, that is, the fiscal court order in so far as it concerns justices of the peace in office at the time of the order, that is urged as bad. No reason is advanced for holding the statute unconstitutional as to any justice of the peace whose election or appointment came after the statute and order. However, since this matter is not before us, we do not pass on it. Adams v. Slavin, 225 Ky. 135, 7 S.W.2d 836.

It is urged that the order fixing the salaries constituted a change in compensation or salary. The word "change" is used in both constitutional sections involved.

■■ The pertinent provisions of Sections 161 and 235 of the Kentucky Constitution, respectively, are:

"The compensation of any city, county, town, or municipal officer shall not be changed after his election or appointment, or during his term of office; * * *."

"The salaries of public officers shall not be changed during the terms for which they were elected; * * *."

The purpose of these constitutional sections is to make the officer independent of the Legislature and to prevent appeals by officers to the Legislature to increase their salaries during the terms for which they were elected. James v. Cammack, 139 Ky. 223, 129 S.W. 582, dissenting opinion of Hobson, J. The statute under consideration was not enacted to increase or decrease an existing method of compensation but was enacted to fulfill a need judicially recognized in Roberts v. Noel, and by the same token was not enacted pursuant to the appeals of the justices of the peace. In this respect, it cannot be said to be in violation of the spirit of the constitutional sections.

In discussing the purpose of Section 161 as an inhibition against change of compensation during a term of office, in City of Louisville v. Wilson, 99 Ky. 598, 36 S.W. 944, it was said:

"* * * there is an essential difference, which we are satisfied the framers of the constitution had in mind, between fixing the amount of compensation an officer shall receive, not hitherto ascertained and settled, and changing it after it has been fixed. It is the obvious and uniform policy

of government, state and municipal, as well as just to each officer to fix his compensation definitely and certainly as to amount, except when he is paid by fees of office. And section 161 does not in terms, nor was it intended to, forbid or at all relate to any statute or ordinance that for the first time does fix the salary of an officer."

In Roberts v. Walker, 227 Ky. 591, 13 S.W.2d 761, it was said:

"The Constitution does not provide that the salary of the officer shall not be fixed after his election, but only that it shall not be changed. It has been the settled practice to fix the salaries after the election when they had not been established by previous action."

See Annotation, 144 A.L.R. 685, to the same effect, and for collected Kentucky cases.

In Asher v. Wilson, 294 Ky. 110, 171 S.W.2d 17, it was held that the question was not an open one. In an almost identical situation under a similar constitutional provision, the same result was reached in Gwynn v. McKinley, 30 Cal. App. 381, 383, 158 P. 1059. See also Shearer v. Flannery, 68 Cal.App. 91, 228 P. 549. Under similar facts, the fixing by the fiscal court of the compensation of county judges for the trial of criminal cases was held not to be a change of compensation within the prohibition of Sections 161 and 235. Robinson v. Elliott County Fiscal Court, 236 Ky. 63, 32 S.W. 2d 554; Bingham v. Bell County Fiscal Court, 255 Ky. 664, 75 S.W.2d 334; Perry County v. Smith, 278 Ky. 321, 128 S.W.2d 751. In the Robinson case, it was specifically recognized that the Legislature may provide for the separate compensation to public officers for different specified services. The cases cited are subsequent to Adams v. Slavin, 225 Ky. 135, 7 S.W.2d 836, relied on by appellant, in which a change in the method of compensation

from fee system to salary was held invalid. The change in compensation was made during the term, but here, compensation is provided for and is to be fixed for the first time for the performance of an old duty. The cases condemning a change in compensation for new or additional duties within the scope of the office are not in point. Other grounds urged for reversal are not considered pertinent under the view here expressed.

■ The argument is also advanced in brief amicus curiae that the fiscal court is disqualified from fixing the salaries under KRS 64.255. No merit is found in this contention since the amount of salary to be paid was limited by the Legislature according to the population of the county. The various fiscal courts were specifically authorized to set the salaries within the limits "notwithstanding provisions of KRS 64.530" "as soon as may be practical." The only function of the fiscal court was to determine which of its members qualified for the payment of compensation within the limits of the statute for the performance of the duties set forth.

■ This raises the question as to whom the compensation may be paid. The statute expresses the legislative intent "to enable justices of the peace * * * to exercise criminal jurisdiction * * *, and to provide for compensation for their performance of the * * * duties thereby imposed upon them."

It further provides that "each justice of the peace may be exclusively compensated for the performance of the duties of his office, in so far as they relate to the trial or decision of criminal cases, * *." Lastly, it is provided that all moneys received or collected as the result of "the performance of the duties or the exercise of the powers" shall be reported and paid over for proper distribution.

An examination of the Legislative Journal of the 1958 regular session of the General Assembly reveals that originally the

proposed legislation contained the word "shall," which was amended by the insertion of the word "may" in lieu thereof. This is taken as being indicative of the legislative intent that payment should be permissive rather than mandatory. In each of the three subsections of the Act, reference is made to payment of compensation for the performance of duties. Hence, it is concluded that the Legislature did not intend that this compensation should be paid to all justices of the peace concerned but only to those who performed their duties in the exercise of criminal jurisdiction. Inasmuch as the order of the Harlan County Fiscal Court does not indicate that the compensation was to be paid on this basis, nor provide any standards of performance of duties by which to measure eligibility for compensation (as was done in the Warren County case, Kitchens v. Milliken, Ky., 329 S.W.2d 68) the order is invalid.

Judgment is reversed.

EBLEN, J., concurring in result.

BIRD, J., not sitting.

EBLEN, Judge (concurring).

While I concur in the result, I differ with the majority on the fundamental issue of the constitutionality of KRS 64.255 as applied to justices of the peace now in office. It is my view that Sections 161 and 235 of the Kentucky Constitution plainly and definitely forbid the application of the provisions of KRS 64.255 to justices of the peace during the present term of office, which began the first Monday in January 1958, for the obvious reason that the statute authorizing the compensation was enacted and became effective during that term of office.

To me the case of Adams v. Slavin, 225 Ky. 135, 7 S.W.2d 836, 838, is decisive and the language of that opinion declaring that, "The Act, then, in so far as it applies to the county judges in office at the time it was approved by the Governor, is unconstitutional" is applicable and controlling in the present controversy. This principle of constitutional interpretation is sound and has the support of a long line of cases, starting with Commonwealth v. Addams, 95 Ky. 588, 26 S.W. 581, decided in 1894, and extending to Weber v. True, 304 Ky. 681, 202 S.W.2d 174, decided in 1947. During this 54 year span there came in inverse order, Hopson v. Department of Revenue, 298 Ky. 635, 183 S.W.2d 812; Johnson County v. Meek, 276 Ky. 656, 124 S.W.2d 1024; Greenup County v. Spears, 259 Ky. 114, 81 S.W.2d 905; Bright v. Russell, 236 Ky. 567, 33 S.W.2d 643; Olive v. Coleman, 228 Ky. 127, 14 S.W.2d 404; Greene v. Cohen, 181 Ky. 108, 203 S.W. 1077; Frizzell v. Holmes, 131 Ky. 373, 115 S.W.246; Commonwealth v. Carter, 55 S.W. 701, 21 Ky.Law Rep. 1509; and Bright v. Stone, 43 S.W. 207, 20 Ky.Law Rep. 817, just to cite a few. In all these cases the statutes providing for an addition to or change in the method of compensation became effective during the term of the officer involved and were held inapplicable to those officers because of the positive prohibitions of Sections 161 and 235.

The cases of Roberts v. Walker, 227 Ky. 591, 13 S.W.2d 761; Robinson v. Elliott County Fiscal Court, 236 Ky. 63, 32 S.W. 2d 554; Bingham v. Bell County Fiscal Court, 255 Ky. 664, 75 S.W.2d 334; Perry County v. Smith, 278 Ky. 321, 128 S.W.2d 751; and Asher v. Wilson, 294 Ky. 110, 171 S.W.2d 17, relied upon by the majority as overruling or discrediting the Adams case, are clearly distinguishable, in that the legislation authorizing the compensation was in effect prior to the time the officer was elected and took office, and that legislation mandatorily required the fixing of a compensation for those services. Those cases simply hold that where the governmental unit charged with that duty failed to discharge it before the election of the officer or before he began his term of office, a discharge of this positive duty thereafter

was required and would not violate Sections 161 and 235. The distinguishing feature is the existence of legislation authorizing the compensation prior to the election of the officer. That was present in the Roberts, Robinson, Bingham, Perry County and Asher cases. It is lacking in the present case.

That KRS 64.255, if applied to justices of the peace during the current term of office, would result in a change in compensation during that term, is self-evident. For the months of January, February and the first 27 days of March, they could not and did not receive any pay for hearing criminal causes, and were limited to the fees and per diem for hearing civil cases, holding examining trials in criminal cases, and service on the Fiscal Court. Then, after nearly three months of the term has elapsed, the compensation is or could have been increased by $250 a month. If that is not an increase in compensation during the term, with every act necessary to make it effective coming after the beginning of the term, then I do not know what to call it.

Moreover, this demonstrates that the cases holding that the compensation may be fixed during the term have no application. In all these cases the salary that was validly fixed, after the election or the beginning of the term, was applicable to every month of the term, including the months, if any, that had elapsed before the compensation was fixed. Butler County v. James, 116 Ky. 575, 76 S.W. 402. In those cases the officer was entitled to that compensation from the moment he qualified and began his service, and for the reason that there was authorization for the compensation and statutory mandate that it be fixed before his election. Quite properly, this Court concluded that the governmental unit charged with the duty of fixing compensation of officers, could not, by failure to perform that duty, deprive the officer of the compensation to which he was entitled. In the present case the Fiscal Court of Harlan County was not under a duty to fix a compensation for jus-

tices of the peace for trying criminal cases prior to the time those justices of the peace were elected or even before they took office. In fact, any order fixing such a compensation for such a service prior to March 28, 1958, would have been void for lack of authority.

In those cases in which the fixing of compensation after the election or assumption of the office was held valid, the officer had a vested right in a reasonable compensation before he was elected. Robinson v. Elliott County Fiscal Court, 236 Ky. 63, 32 S.W.2d 554; Brown v. Laurel County Fiscal Court, 175 Ky. 747, 194 S.W. 907. Certainly, the justices of the peace here had no vested right in any compensation for trying criminal cases, either before their election or the beginning of the term in January 1958. The right to this compensation could not have become vested in any justice of the peace prior to March 28, 1958, and the term was nearly three months gone then. When the present justices of the peace were elected in 1957, and took office in January, 1958, there was no assurance that a statute authorizing compensation to them for trying criminal cases would be enacted. So prior to election and entering office the most they had was an expectation, which the majority have erroneously converted into a vested right.

There is yet another difference between the approved fixing of compensation after election pursuant to pre-existing legislation authorizing the same, and that upheld in this case. Where a statute requires the compensation of an officer to be fixed before his election, and this duty is not discharged until after his election, the compensation that is so fixed cannot be changed during that term. That fixing, though a delayed one, holds for the entire term, and there cannot be a second fixing of either a greater or lesser amount. Butler County v. James, 116 Ky. 575, 76 S.W. 402. If in the present case the majority are consistent, they would be forced to hold that the next Legislature could repeal KRS 64.255, effective during the current term of justices

of the peace so as to withdraw compensation from them for trying criminal cases. If adding this compensation during the term is not a forbidden increase it would necessarily follow that withdrawing the same compensation during the term would not be a forbidden decrease.

Nor can the application of KRS 64.255 to justices of the peace during the current term be justified under such decisions as Coleman v. Hurst, 226 Ky. 501, 11 S.W.2d 133; James v. Cammack, 139 Ky. 223, 129 S.W. 582; and Thomas v. O'Brien, 138 Ky. 770, 129 S.W. 103. In those cases legislation, authorizing additional compensation, and enacted during the term of the officer, was held applicable to those officers in spite of Sections 161 and 235, the decisions being predicated on the dubious ground that the new duties imposed, for which the added compensation was given, were outside the "official duties" of the officer. Here, it cannot be and is not claimed that the duty of presiding in criminal causes is outside the "official duties" of the justice of the peace. These officers performed this duty continuously under the present Constitution until the issuance of the mandate in Roberts v. Noel, Ky., 296 S.W.2d 745, and the majority opinion states that the duty of the justice of the peace to try criminal cases "was a continuing duty rather than a new one."

I am fully aware that the decision in the Roberts case may have given rise to what might be called a "quasi-emergency", although I think the withholding of the mandate is more immediately responsible for the apparent exigencies. No matter how real, or critical, in my opinion it cannot authorize or justify a manifest evasion of the clear mandates of Sections 161 and 235.

Since I have concluded that the statute cannot be applied to justices of the peace during their current term of office, I express no opinion as to whether the statute requires the rendering of this service before entitlement to the compensation.