## Coleman, Auditor of Public Accounts, v. Hurst.

(Decided November 27, 1928.)

Appeal from Franklin Circuit Court.

1. Constitutional Law.—All doubts as to the constitutionality of an act of the General Assembly should be resolved in favor of its validity.

2. Statutes.—Court should not strike down entire Act March 14, 1928 (Acts 1928, c. 20), establishing judicial council of commonwealth, merely because technically discriminating in matter of compensa-

tion against members not complaining, or illegally providing compensation to clerks of circuit courts for additional duties imposed on them.

3. Judges.—Acts 1928, c. 20, establishing judicial council of commonwealth, held not objectionable as, allowing salaries to members who are circuit judges for services which General Assembly had power to impose on them as such judges, in violation of Constitution, secs. 126, 136.

4. Constitutional Law.—The Constitution should not be given a narrow construction, which will hamstring the judiciary and render it impotent to discharge its functions, as by holding unconstitutional Acts 1928, c. 20, creating judicial council of commonwealth

5. Officers.—Membership in judicial council, created by Acts 1928, c. 20, is not incompatible with duties of circuit judges and judges of the Court of Appeals, within Constitution, secs. 165, 237, prohibiting same person from holding two or more incompatible offices.

6. Officers.—There is no incompatibility of office, precluding the same person from holding more than one state office, except as prescribed by Constitution, secs. 165, 237, or laws enacted pursuant thereto, or in cases of incompatibility of duties and different positions.

7. Officers.—Under Constitution, sec. 246, no public officer, other than Governor, can be piad more than $5,000 per annum as compensation for public services, whether rendered in one position or more than one.

8. Judges.—Act March 14, 1928, allowing $600 annual compensation to all members of judicial council, except those receiving compensation up to limit prescribed by Constitution, sec. 246, does not violate section 133, requiring that compensation of circuit judges be equal and uniform throughout state, so far as payable from state treasury, but bears alike on every one belonging to same class.

9. Officers.—The General Assembly has the power to impose new duties on a public officer as such, and no increase in compensation for discharge of such duties may be made during his term of office, under Constitution, sec. 235, but compensation may be allowed during term for performance of additional duties not pertaining to office as such.

10. Judges.—Duties of members of judicial council, under Acts 1928, c. 20, are not duties added to office of circuit judge, for which no compensation may be allowed during term, under Constitution, sec. 235, but are duties wholly outside those of such judge, and hence compensable as provided therein, without violating constitutional provisions.

11. Statutes.—Title of Act March 14, 1928, (Acts 1928, c. 20), "An act to establish the judicial council of the commonwealth of Kentucky, to provide for its duties and expenses," held sufficient under Constitution, sec. 51, to authorize provisions for doing things pre-

scribed in body of act, including payment of members' salaries, which are expenses of council.

12. Constitutional Law.—Courts cannot go into the question of the widom of an exercise of legislative power.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellant.

EDWARD C. O'REAR and ALLEN PREWITT for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The General Assembly, at its regular session in 1928, enacted a bill to establish the Judicial Council of the commonwealth of Kentucky. The act is as follows:

"An Act to establish the Judicial Council of the Commonwealth of Kentucky, to provide for its duties and expenses.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Sec. 1. That there is hereby established the Judicial Council of the Commonwealth of Kentucky. Such Council shall consist of the judges of the Court of Appeals of Kentucky and the Circuit Judges of said Commonwealth. The Chief Justice of the Court of Appeals shall be the presiding officer.

"Sec. 2. Said Council shall meet on the call of the Chief Justice of the Court of Appeals. Said meeting shall be called at least once a year at some convenient time, and at some convenient place in the State. It shall be the duty of all members of said Council to attend such session.

"Sec. 3. It shall be the duty of said Judicial Council to study the organization, rules, methods of procedure, and practice of the judicial system of the Commonwealth of Kentucky, the work accomplished and the results produced by that system in its various parts; the problems of administration confronting the Courts of the Commonwealth and the judicial system in general. It shall be the duty of each Circuit Judge to prepare and submit to the Council at such sessions a report setting forth the conditions in the Circuit Courts over which he presides and of the business dispatched and pending in said Circuit Courts. It shall be the duty of said

Council to report biennially to the General Assembly of the Commonwealth of Kentucky concerning the work of the various branches of the judicial system of the Commonwealth together with any recommendations it may have for the modification or amelioration of existing conditions or for any amendments to the Codes of Practice and procedure.

"Sec. 4. The clerks of the various courts of the Commonwealth shall make such reports to the Council as the Council may demand. Said Clerks making reports shall receive fifty cents for each page reported to said Council and shall be paid as other expenses of the Council are paid. The Council is empowered in its discretion to hold before the full Council or any committee thereof it may constitute for such purpose, public hearings on any question concerning which the Council may deem it proper to hold public hearings.

"Sec. 5. If any session of said Council shall be held between the time of the election or appointment of any Judge of the Court of Appeals or of any Circuit Judge and the time such judge-elect or so appointed shall take office, it shall be the duty of said judge-elect or so appointed to attend such session of said Council.

"Sec. 6. Each member of said Council shall receive as compensation for attending the sessions of said Council or of any committee thereof, and for his services as a member of such Council or any committee thereof, the sum of six hundred dollars ($600.00) per annum, payable in equal monthly installments at the same time as his salary as judge is paid; provided, however, that no member of said Council whose salary as a Circuit Judge, which is paid by the State, is supplemented by any county or district and no member of the Court of Appeals and no judge-elect or appointed but who has not at the time he attends any sessions of the Council been inducted into office shall receive any compensation for attending any session of the Council or of any committee thereof or for his services as a member of such Council or any committee thereof. The said members and said judges who shall attend any session of said Council or that of any committee of said Council shall be allowed their necessary traveling ex-

penses and such other actual expenses as do not exceed ten dollars ($10.00) per day for each day of any such session and for such days as may be reasonably necessary for them to reach and return home from the place of meeting of any such session. All claims for expenses as provided for in this Act shall be allowed and paid as provided by law for the payment of other claims against the Commonwealth, but before such claims shall be allowed by the Auditor, the same shall be presented to and approved by the Chief Justice of the 'Court of Appeals.

"Sec. 7. The Council and its committees shall be allowed from the State treasury such necessary expenses for clerical and other services as the Chief Justice shall approve, the same to be allowed and paid as provided by law for the payment of other claims against the Commonwealth.

"Sec. 8. All laws or parts in conflict with any provision of this Act are hereby repealed.

"Approved March 14, 1928."

Acts 1928, c. 20.

The Attorney General, having doubts as to the constitutionality of the act, advised the auditor of public accounts that the salary provided for the members of the council should not be paid without first obtaining a judicial determination of the validity of the act. The auditor, pursuant to that advice, declined to issue warrants for the monthly salaries provided, whereupon Sam Hurst, circuit judge of the Twenty-Third judicial district of Kentucky, who by virtue of the provisions of the act became a member of the Judicial Council, instituted this action in the Franklin circuit court, seeking a mandatory injunction to compel the auditor to issue warrants for his salary. He made the necessary allegations to show that he was entitled to the salary if the act is valid, in that he alleged facts showing that he was a member of the council and belonged to that class of members who were entitled to receive a salary, and that he had been engaged in the performance of his duties as a member of the council, and was ready, willing, and able to continue his duties in accordance with the provisions of the law.

The regular circuit judge being disqualified to sit in the case, Hon. John C. Doolan, of the Jefferson county

bar, was designated as special judge to try the case. The Attorney General filed a demurrer to the petition, which was overruled by the special judge, and, in a well-considered opinion, he upheld the validity of the act.

The Attorney General has brought the case to this court, and in support of his reasons for doubting the validity of the act he has filed a carefully prepared brief on the merits of the case, in which he points out with clarity the grounds of his objection, and argues the grounds with plausibility. The case was orally argued, in addition to having been ably briefed on both sides, and this court now has before it the reasons advanced for and against the validity of the act.

The grounds of attack may be summarized as follows: (1) That the title to the act is defective and violates section 51 of the Constitution. (2) That the act violates section 133 of the Constitution, which requires that the compensation of circuit judges shall be equal and uniform throughout the state, so far as the same shall be paid out of the state treasury. (3) That the act violates the provisions of section 126 of the Constitution, in that it allows a salary to the members of the council who are circuit judges for services to be rendered under the law, which the General Asesmbly had the power to impose on circuit judges as such, and that it also violates section 136 of the Constitution for the same reason. (4) That it violates section 59 of the Constitution, in that it is special legislation relating to the practice of circuit courts. (5) That it violates the provisions of section 235 of the Constitution, in that it changes the salaries of the circuit judges during the terms for which they were elected.

There is another objection urged against the validity of the act, which may be inferred from the argument of the Attorney General, and that is that it is invalid, because it discriminates as to the question of salary among the members of the Judicial Council. The learned special judge, in passing on the demurrer to the petition, gave the reasons for his ruling in the following written opinion:

"This case has been ably argued on both sides and the court has reached the conclusion that the act in question is valid and constitutional. This conclusion seems warranted upon both principle and precedent.

"I. On principle the act should be sustained because:

"(1) It is firmly settled that all doubts as to the constitutionality of an act of the General Assembly should be resolved in favor of its validity. The main grounds of attack on this act are based on sections 51 and 235 of the Constitution. As to the objections under section 51, the court is of opinion that the title is sufficiently general to include all the subjects included in the body of the act. It can hardly be said, then, there is anything in the body of the act not germane to the title or included in it. The court is of opinion that the clause of the title, 'to provide for its duties and expenses,' refers to the expenses of the Judicial Council, and this includes allowances of compensation to its members. Certainly this would be so, if the Judicial Council were composed of members other than judges of the various courts mentioned.

"(2) The objections based upon section 235 of the Constitution assume that the duties imposed by this act upon its members are duties incident to the functions of the circuit judges in their official capacity as judges of the circuit courts in their respective circuits. The court cannot agree with this view. The duties are such as might have been devolved by the General Assembly upon a council or commission composed of such members as might be selected or appointed according to law. Such duties, though compatible with the duties of a circuit judge, are not necessarily incident thereto or inseparable therefrom. Had the General Assembly provided for a Judicial Council composed of members other than judges, it would have had a right to provide compensation for them. Since it provided that the membership shall be composed of judges, no sufficient reason appears why they should not be paid for their services in this extraofficial character (so far as their judicial capacity is concerned), so long as the provisions of section 246, limiting to $5,000 the compensation of public officers other than the Governor, are not violated.

"(3) Objection is also urged that the compensation made to the various members of the Judicial Council is not 'equal' or 'uniform' within the mean-

ing of section 133. That section deals with salaries
of judges of the circuit courts (in their official capa-
city), so far as paid out of the state treasury. It
does not deal with salaries paid for services not in-
cluded in their official capacity as judges of the cir-
cuit courts serving in their respective circuits.
James, Auditor, v. Cammack, 139 Ky. 223, 129 S. W.
582. Moreover, the act shows on its face that the
General Assembly, in withholding compensation
from judges of the Court of Appeals and from those
circuit judges whose salaries are supplemented by
their local communities, was careful to keep within
the Constitution by observing strictly the provisions
of section 246.

"Furthermore, the court is not disposed to
strike down this entire act merely because it might
technically be said to discriminate in matter of com-
pensation against certain members of the Judicial
Council who are not here complaining, and this ob-
servation applies with greater force to the point that
this act is void because it provides compensation to
clerks of circuit courts for additional duties imposed
upon them by the act. Even if the act be void as to
the circuit clerks, it was conceded at the oral argu-
ment that this would not necessarily invalidate the
entire act.

"(4) Other objections are urged under sections
126 and 136 of the Constitution, but they are prac-
tically disposed of by the consideration above stated
and by the decision of the Court of Appeals in
James, Auditor, v. Cammack, supra.

"II. On precedent, this act, in the court's
opinion, must be held valid under the decision of the
Court of Appeals in James, Auditor, v. Cammack.
The soundness of that decision is vigorously. as-
sailed in this case, as well as in the able dissenting
opinion in that case; but this court would hardly
feel at liberty to disregard a thoroughly considered
opinion of the Court of Appeals, even if it did not
approve the reasoning of the majority opinion. The
instant case presents a materially stronger case for
the validity of the act here assailed than James v.
Cammack, where the duties of special judge were
and are essentially judicial, and materially different
from the duties imposed by the act here in question

upon circuit judges and judges of the Court of Appeals.

"III. Nor is this court concerned with the wisdom of the General Assembly in creating a Judicial Council, composed of men actually and actively engaged in the vital business of administering justice in civil and criminal cases in the judicial department of the government. The plan adopted has the approval of experience in the efficient working of the Judicial Council authorized by act of Congress, consisting of the Chief Justice of the United States Supreme Court and the Senior Circuit Judge in each of the nine Circuit Courts of Appeals. It was, moreover, stated without contradiction at the argument that seven other states had adopted similar legislation, following the long-continued agitation of this subject in the American Bar Association and in the Bar Associations of various states.

"Certainly, the members of the judiciary should, of all members of the community, best know the problems of administering justice effectively, and when the General Assembly sees fit to impose upon the judges of the state the duty of mobilizing the judiciary to consult upon and to recommend needed changes in the jurisprudence of the state, and efficient methods of administering the laws of the state, this court does not feel justified in challenging its wisdom or striking down its legislation enacted for such laudable purposes.

"IV. The practice of law is a profesison, but the administration of justice is a business, and the most important of all the functions of government. It should be organized so as to keep pace with the civilization of our times. It would be a reproach to our government not to do so. It cannot keep pace with the times, if those who are charged with such tremendous responsibilities are isolated from one another, or compelled at their own personal expenditure of time or money to solve the changing problems of every day life. It is the glory of the common law, of the English Constitution, and of the United States Constitution, that each of them adapts itself to the march of progress. The court cannot reconcile itself to the view that a narrow construction should be placed upon the Constitution of Kentucky,

which will hamstring the judiciary of the state and render it impotent to discharge its vital functions.

"V. It goes without saying that the Attorney General and the auditor are absolutely justified in presenting to the courts for their decision the interesting and important questions arising under the Constitution of Kentucky which have been so ably argued in this case on both sides, but in the opinion of the court the General Assembly had power to enact the statute in question and that power was most wisely exercised. The demurrer to the petition is therefore overruled."

That opinion appears to us sound, and we might rest our conclusions there, without going further into the matter; but we feel constrained to add additional reasons, which, to our mind, conclusively show that the act is not the proper subject of attack along the lines indicated in the splendid brief filed on behalf of the commonwealth.

It must first be observed that the members of the council so far as compensation for services is concerned, are divided into two classes. One class receives no compensation. To that class belong the members who are judges of the Court of Appeals, or judges in judicial districts where the salary paid from the treasury of the state is supplemented by appropriations made by the local authorities governing municipalities within the district. All of the other members receive compensation in the sum of $600 annually, payable monthly out of the state treasury. The reason for this discrimination in the payment of compensation is obvious. There is no provision in the Constitution against the same person holding more than one state office, unless the two are incompatible. Sections 165 and 237 of the Constitution relate to the incompatibility of office. It needs no argument to prove that membership in the Judicial Council is not incompatible with the duties of a circuit judge, or judges of the Court of Appeals. There is no reason, therefore, found in the Constitution, why a person holding the office of circuit judge may not be a member of the Judicial Council. The truth is that many public officials hold membership on boards and commissions when the duties are not incompatible, and their right to hold the office and also membership on the board or commission has never been doubted. The Attorney General, by virtue of his

office, is not only Attorney General of the commonwealth of Kentucky, but he is a member of the Sinking Fund Commission for the state of Kentucky, also a member of the Printing Commission and for many years also a member of the State Board of Education. The secretary of state is likewise a member of each of the commissions and the board mentioned. The Governor is a member of the State Highway Commission, the State Board of Charities and Corrections, the Sinking Fund Commission, the Printing Commission, and many other boards and commissions. The county judge of a county is not only a county judge, but he is judge of the juvenile court, judge of the quarterly court, and a member of the fiscal court.

There is no incompatibility of office, except as prescribed by the Constitution, or laws enacted pursuant thereto, or in cases where there is incompatibility of duties in the different positions. It is nothing new, therefore, for the General Assembly to provide that the Judicial Council shall be composed of the members mentioned in the act, but when we come to the question of compensation a different matter is presented. Section 246 of the Constitution contains the provision that no public officer other than the Governor shall receive more than $5,000 per annum as compensation for official services. It is not allowable to pay exceeding $5,000 annually to the same person for public services, whether such services are rendered in one position or more than one. If it were allowable to pay compensation up to the constitutional limit for each public position held, the provision of the Constitution would mean nothing. Therefore, in allowing compensation for public services, the aggregate of the amount allowed for services to the same person holding different public offices must be limited to the sum prescribed in section 246 of the Constitution.

The act in question allowed $600 annually to all members of the Judicial Council, and then excepted from the provisions of the law the members receiving compensation up to the constitutional limit. Evidently that was the reason for the classification, although the act provides that no circuit judge whose salary is supplemented by counties or districts shall be entitled to any part of the compensation allowed to the members of the Judicial Council. There is no lack of uniformity in the law. It bears alike on every one belonging to the same class, and

that takes from the law any vice charged against it on account of lack of uniformity.

All of the other objections, except one urged by the Attorney General in his brief and in oral argument, may be reduced to one question. If the act provides for an increase in salaries of circuit judges, it violates at least some of the provisions of the Constitution relied on. On the other hand, if it is not an increase in the salary of circuit judges, it violates none of the provisions. So the question is whether the act provides for an increase in the salaries of circuit judges.

The opinions of this court are not in conflict on questions of what is, or what is not, an increase in the compensation of a public official during his term of office. It has been consistently held by this court that the General Assembly has the power to impose new duties on a public officer as such, and that no increase in compensation for the discharge of such duties may be made during his term of office. The question always is whether the General Assembly is acting within its authority in changing the duties of the office by imposing additional work on the office itself. If that is the effect of an act increasing duties of a public office, the compensation may not be increased during the term for the performance of such duties. It is true, as a matter of course, that there can be no increase in compensation during the term for the performance of the duties required at the beginning of the term.

The case of Bright v. Stone, Auditor, 43 S. W. 207, 20 Ky. Law Rep. 817, and the case of Commonwealth v. Carter, 55 S. W. 701, 21 Ky. Law Rep. 1509, were cases where the General Assembly allowed the circuit court clerk a fee of $5 for services rendered by him in connection with felony cases, when there had been no provision for the payment of such compensation at the beginning of his term. This court held that the increase in compensation was invalid for that term.

It was held in the case of Piercy v. Smith et al., 117 Ky. 990, 80 S. W. 201, 25 Ky. Law Rep. 2158, that the allowance to a county school superintendent for each pupil child in the county should remain as fixed for the first year of his term, although a statute passed during his term provided for a minimum total above what his compensation was for the first year of his term. The increase was held unauthorized by this court.

It was held in the case of McNew, County Judge, v. Commonwealth, 123 Ky. 115, 93 S. W. 1047, 29 Ky. Law Rep. 540, that the salary of a county official must remain the same, when once fixed, during his entire term of office, and that he was not entitled to the benefit of an order increasing the salary during the term.

The General Assembly enacted a law providing that county judges, police judges, and justices of the peace should receive no compensation for holding examining trials, unless the offender was subsequently indicted. At the beginning of the terms of these officers they were entitled to compensation for holding examining trials, whether or not the offender was indicted. In the case of Thomas v. Hager, Auditor, 120 Ky. 428, 86 S. W. 969, 27 Ky. Law Rep. 813, this court held that the act was invalid as to those officers during the term for which they were elected, as it was a reduction of their compensation.

The fiscal court of McCracken supplemented the salary of the circuit judge during his term of office. In the case of McCracken County v. Reed, 125 Ky. 420, 101 S. W. 348, 31 Ky. Law Rep. 31, this court held that the order supplementing the salary was invalid during that term of the circuit judge.

The first case dealing with the question of increase of compensation during the term where additional duties were imposed by the General Assembly for which a compensation was allowed was the case of Frizzell v. Holmes, 131 Ky. 373, 115 S. W. 246. The General Assembly enacted a law making the county jailer the superintendent of buildings, and required him to look after the cleanliness, heating, and lighting of the buildings designated in the act. A compensation was allowed him by the provisions of the act. This court held that the jailer was not entitled to the compensation provided for the services during the term, because it was an increase in his compensation. That case clearly illustrates the power of the General Assembly to add to an office additional duties and require the officer to discharge the duties without an increase in his compensation.

To the same effect is the case of James, Auditor, v. Duffy, 140 Ky. 605, 131 S. W. 489, 140 Am. St. Rep. 404. The General Assembly had made it the duty of a county attorney to represent the commonwealth in collecting inheritance taxes. This law went into effect during the term of the county attorney. He sought to recover the

compensation provided by the act, but a recovery was denied on the ground that it was an increase of his compensation during his term. This is another case where duties were added to the office, and the officer was required to discharge the duties.

The General Assembly enacted a law to suppress certain diseases in live stock, enlarging the scope and adding to the duties of the office of commissioner of agriculture. Compensation was provided for the additional duties. The officer filling the office at the time sought to collect the additional compensation, but his right to it was denied by this court in the case of Greene v. Cohen, 181 Ky. 108, 203 S. W. 1077. In that case this court clearly pointed out the distinction between new duties added to the office, which the officer must perform, and cases where duties were prescribed aside from those which belonged to the office, which the officer must perform.

Another case illustrating the power of the General Assembly to add to the office additional duties and require the officer to perform them is Neutzel, Clerk, v. Jefferson County, 183 Ky. 1, 208 S. W. 11, where the clerk sought to recover an increase in compensation made during his term for making out tax bills.

The two last cases dealing with the question of increase in compensation are Green v. Bell County, 222 Ky. 328, 300 S. W. 857, and Adams, Judge, v. Slavin, 225 Ky. 135, 7 S. W. (2d) 836. In these two cases the court adhered to its former opinions in holding that duties had been imposed upon, or added to, the office, and that the officer was not entitled to any increase in compensation during his term for performing the additional services.

Now, turning to the other side of the question that is, where duties are added which do not pertain to the office as such, but which duties the officer is required to perform—we find that this court has dealt occasionally with that side of the question.

The first case is that of Purnell v. Mann, 105 Ky. 87, 48 S. W. 407, 49 S. W. 346, 50 S. W. 264, 20 Ky. Law Rep. 1146, 1396, 21 Ky. Law Rep. 1129. Prior to the enactment of the election law of 1898, known as the Goebel Election Law (Acts 1898, c. 13) the county judge, county clerk, and sheriff, by enactment of the General Assembly, had been required to discharge duties as a board of canvassers, or county election commissioners.

The act of 1898 relieved them of these duties, and provided for the appointment of a board of election commissioners to supersede the officers mentioned. These officers raised the question that they could not be deprived of the compensation which had been allowed to them by the law in effect at the beginning of their term; that is, the compensation for their services in acting as election commissioners. This court denied their contention, on the ground that the duty which had been imposed upon them by the law to act as election commissioners was a duty outside of the respective offices which they held, and was not a part of the duties of such offices. It was, therefore, held that the General Assembly had the power to relieve them of their duties as election commissioners, and to take from them the compensation provided by the law, and that in doing so the compensation for services rendered in their respective offices as judge, clerk, and sheriff had not been reduced.

Under the authority of that opinion the compensation provided for members of the Judicial Council could be abolished by the General Assembly at any time, although a circuit judge, when he began his term, may have been entitled to it by reason of his thereby becoming a member of the Judicial Council. If compensation can be taken away, and the amount which the officer receives thereby reduced, without violating a constitutional provision, the compensation may be allowed during a term, without violating a constitutional provision.

In the case of Slayton v. Rogers, 128 Ky. 106, 107 S. W. 696, 32 Ky. Law Rep. 897, the court had before it a question as to whether a county attorney, who had been allowed $875 as extra compensation for services rendered in the federal court, and in settling with the sheriff, was entitled to such compensation in addition to the compensation which he received for discharging the duties of his office. This court held that he was, and stated the principle which differentiates the two lines of cases now under discussion by saying:

> "The rule [is] that, where an officer or employee performs extra services outside of official duties and with which they have no affinity or connection, and which do not interfere with his official duties, he is entitled to compensation."

Another case where compensation was upheld is that of Thomas v. O'Brien, 138 Ky. 770, 129 S. W. 103. An act had been passed by the General Assembly after the election of a justice of the peace which allowed such an officer compensation for serving on committees. He sought, in that action, to recover for his services as a committee man. It was held by this court that he was entitled to his compensation, because the duties which he had been required to perform were not duties of the office of justice of the peace, but were duties outside of the official duties of such officer.

The most carefully considered case on the subject is that of James, Auditor, v. Cammack, 139 Ky. 223, 129 S. W. 582. The principles announced in that case have not been departed from. The Attorney General questions the soundness of that opinion, but it is in harmony with the uniform holding of this court on the same questions. The General Assembly provided that circuit judges should be appointed and commissioned as special judges, and as such they might be sent into any part of the state to hold court. Compensation was allowed to them for their services as special judges. The act was upheld, and the compensation allowed during the term for which they had been elected as circuit judges. The same reasons guided the court in that case as in the other cases cited. Additional duties were not added to the office of circuit judge, which the officer was required to perform, but duties were added outside of the office of circuit judge, and compensation was allowable for services rendered in the performance of such duties.

If we should hold that the act creating the Judicial Council is unconstitutional, we would have to overrule many cases, and the court would be compelled to depart from the principles announced in opinions from time to time for more than a quarter of a century. This we cannot do. The duties of members of the Judicial Council are not duties added to the office of circuit judge, for which no compensation may be allowed during the term, but the duties are wholly outside of the duties which a circuit judge is required to perform, and, therefore, under the many cases cited, the compensation is legal, and the act does not violate any of the provisions of the Constitution relating to compensation to be paid out of the state treasury.

The other ground relied on by the Attorney General is that the act violates section 51 of the Constitution. We find no merit in that contention. The title of the act relates to the establishment of a Judicial Council, and that of itself may have been sufficient to authorize the General Assembly to provide for the doing of the things prescribed in the act. But the title goes further, and indicates that the act provides for duties of the Judicial Council and also for its expenses. There would be some merit in the contention of the Attorney General, if the title to the act limited expenses to the expenses of the members, but that is not the case. Salaries of the members of the council are expenses of the council. That is a self-evident truth.

There is some suggestion that the act is not a wise exercise of legislative power. Courts cannot go into that question, but it is not out of place to say that the general purposes of the act are to make justice more speedy and less expensive. The duties imposed upon the members of the council are such that their performance will amply entitle those who perform them to the compensation allowed. Moreover, the purpose of the act is to lessen the cost of litigation in civil cases, thereby saving litigants much money, and to lessen the expenses in trials of criminal cases, a matter in which the commonwealth and the taxpayers are greatly interested. If the result of the operation of the act is to bring about a more efficient judicial system, the benefits accruing to the commonwealth should be much larger than the expenses of the council, and, in addition thereto, law enforcement along all lines will be aided.

The special judge who tried this case below, in his opinion, referred to the Judicial Council authorized by an act of Congress consisting of the Chief Justice of the United States Supreme Court and the Senior Circuit Judges in each of the nine Circuit Courts of Appeals. The American Bar Association has discussed the question of Judicial Councils, and a discussion of the same question is found in the Journal of the American Judicature Society, as well as in the discussion of the "Business of the Supreme Court" by Frankfurter and Landis. The idea of the Judicial Council is found in English jurisprudence as far back as 1875. Wisconsin, Oregon, Ohio, Massachusetts, North Carolina, North Dakota, and Virginia, through their Legis-

latures, have seen proper to provide for a Judicial Council. The establishment of a Judicial Council was recommended in the excellent report of the efficiency commission in 1924, which commission was created by an act of the General Assembly to study the problems of the government of Kentucky and to make recommendations concerning them. It will be seen that the General Assembly of Kentucky had precedent for the step which it has taken.

The purpose of the act, as clearly shown by the act itself and by the thought of the best legal minds throughout the nation and in England, and by acts of the legislative branch of sister states, was not merely to increase the salaries of circuit judges. There was a far wiser purpose behind it all. The thoughtful student, who is interested in the development of the idea of bringing those together in a Judicial Council whose business it is to dispense justice, will find food for thought and instruction by an examination of "The Business of the Supreme Court" by Frankfurter and Landis. Beginning on page 220 of that work will be found a discussion of this question, with numerous footnotes containing quotations from addresses of able judges and lawyers throughout the world, as well as references to acts, pamphlets, and books pertaining to the same matter.

Having reached the conclusion that the act under consideration does not change the salaries of circuit judges as such, and that other objections urged are without merit, it follows that the judgment of the lower court should be affirmed.

Judgment affirmed. Whole court sitting except Judge Dietzman.