**Robert F. MATTHEWS, Jr., Commissioner of Finance, Commonwealth of Kentucky, Appellant,**

v.

**Charles M. ALLEN, Circuit Judge, 30th Judicial District, et al., Appellees.**

Court of Appeals of Kentucky.

June 22, 1962.

Concurring Opinion July 17, 1962.

As Modified on Denial of Rehearing
Oct. 5, 1962.

John B. Breckinridge, Atty. Gen., Joe Nagle, Asst. Atty. Gen., for appellant.

James W. Stites, Sr., Louisville, Ben B. Fowler, Frankfort, for appellees.

MILLIKEN, Judge.

This action brings before the Court the provisions of Section One of an Act of the 1962 General Assembly, known as House Bill No. 65, which is to become effective July 1, 1962, and which in all practical effect raises the salary of Circuit Judges from $8,400 a year to $10,800, $2,400 over the dollar limit stated in Section 246 of the Constitution.

The provisions of Section One are simple. All Circuit Judges are constituted special commissioners of the Court of Appeals, and are directed to perform such duties as may be required of them by the Court of Appeals. These duties are to be performed at such times and places, coextensive with the Commonwealth, as may be required by this Court. As compensation for these addi-tional services each such special commissioner is to be paid the sum of $2,400 per annum from the State Treasury, which is in addition to his salary as Circuit Judge. In the event any Judge fails to perform duties assigned to him as special commissioner, the Act directs the Court of Appeals to forthwith remove him from the office of special commissioner. The appellees are Circuit Judges who obtained judgment in a declaratory judgment action which directed the appellant, Robert F. Matthews, Jr., Commissioner of Finance, to issue necessary warrants for payment at the proper time of the additional salary authorized by the Act.

The Attorney General has conceded that there is no violation of Section 235 of the Constitution prohibiting an increase in salaries of public officers during their terms. His concession is based upon such cases as James v. Cammack (1910), 139 Ky. 223, 129 S.W. 582, and Coleman v. Hurst (1929), 226 Ky. 501, 11 S.W.2d 133, where added compensation within constitutional limits was allowed for the imposition of added duties. In Barker v. Barnes (1952), Ky., 248 S.W.2d 901, we concluded that the highest constitutional salary paid a public officer in a given year became the standard applicable to him for that year. (Commonwealth Attorney at $7,200 became a Circuit Judge at $8,400.) Together, these decisions were found by Special Judge, Hon. Allen Prewitt, to form an acceptable basis for freeing Circuit Judges from the $8,400 category of Section 246 by making them special commissioners of this Court with State-wide jurisdiction, thus elevating them to the $12,000 category for officers whose duties are coextensive with the State. However, it must be noted that none of these decisions is direct authority for the payment of compensation in excess of the constitutional limit for the principal office held. In fact, Coleman v. Hurst, 226 Ky. 501, 11 S.W.2d 133, and City of Louisville v. German, 286 Ky. 477, 150 S.W.2d 931, held that an officer's salary could not exceed the constitutional limit re-

gardless of the number of positions held by him. Regardless of this, candor compels the questions: Is this sort of indirect approach necessary in order to afford Circuit Judges an adequate salary under the Constitution? Is the salary limitation provision (Section 246) of our State Constitution a mere lifeless mathematical formula?

Counsel insist that substantial salary increases may be granted within the monetary limits of the present constitutional provision if the various limitations are treated as a scale of values rather than as nominal "dollar" limitations, a principle of interpretation which would permit adaption of the limitations to the changing values of the purchasing power of the "dollar" and the general cost of living, thus making the Constitution vital, not formal—not a mere mathematical formula. There is much to support this view as we shall see.

It may be well to note at this point that there are two constitutional provisions pertaining to the compensation of Circuit Judges:

Section 133 of the Constitution provides:

"The Judges of the Circuit Court shall, at stated times, receive for their services an adequate compensation to be fixed by law, which shall be equal and uniform throughout the State, so far as the same shall be paid out of the State Treasury."

Section 246, as amended in 1949 and now operative, provides:

"No public officer * * * shall receive as compensation per annum for official services * * * any amount in excess of the following sums: Officers whose jurisdiction or duties are coextensive with the Commonwealth * * * and Judges and Commissioners of the Court of Appeals, Twelve Thousand Dollars ($12,-000); Circuit Judges, Eight Thousand Four Hundred Dollars ($8,400); and all other public officers, Seven Thousand Two Hundred Dollars ($7,-200). * * *"

It will be observed that Section 246 does not fix the compensation; it merely puts a limit on the "dollars" that can be paid without stating whether they are "dollars" of 1949 purchasing power or "dollars" of current value. It is also significant that the 1949 amendment to Section 246 does not modify the adequate pay provision of Section 133 in any way, and it thus creates the need of harmonizing the two provisions which can be accomplished, truthfully and practically, only by construing the specific monetary provisions as a scale of relative values. In other words, we must assume that $8,400 was an adequate salary for Circuit Judges at the time the amendment was adopted in 1949 and thus initially harmonize the two provisions. But when the nominal dollar salary becomes of such reduced purchasing power in relation to the cost of living that it no longer enables its recipient to maintain the standard of living afforded by the same salary in 1949, it is necessarily inadequate within the meaning of Section 133. The sections can be truthfully harmonized only through equating "dollars" with what they will do in the market place.

We should like to interpolate here that adequacy is not a normal standard governing the compensation of public officers who may receive either too much or too little for the services rendered. Ordinarily, public compensation is not paid on a quantum meruit basis. 43 Am.Jur., Sec. 362, p. 150. The standard of adequate compensation directed in Section 133 (and also Section 112) of the Constitution finds no counterpart in any other section of the Constitution which raises speculation whether the salaries of judges ever were intended to come within the scope of Section 246 (the $5,000 salary limitation) before its specific amendment in 1949 to include the Courts. In view of the separate adequate pay sections (112 and 133) covering the judiciary and the peculiar wording of original Section 246, we are inclined to

wonder if the latter section was not intended to cover solely the Executive Department of the government.

Be that as it may, the inclusion of the Courts in the 1949 amendment to Section 246 was done in order to afford the Courts just or adequate compensation when it was thought the $5,000 limitation of original Section 246 precluded the payment of it. It is interesting to find that the national average compensation of trial judges in 1949 was $9,487 as compared to the $8,400 limit inserted in Section 246. Now the national average is $15,700. In the case of State Supreme Courts the national average in 1949 was $11,744 as compared to the $12,000 limit inserted in Section 246. (Now the national average for State Supreme Courts is $19,100.)

We call attention to this background because it indicates national averages were considered in setting the constitutional limits in 1949 and that it was not the intention of the founding fathers or the supporters of the 1949 amendment to Section 246 in 1949 to doom public officers to the strapped financial state a waning dollar value so easily can produce. With all circuit judgeships to be filled by the electorate in November, 1963, for full six year terms a practicable constitutional means for making the office more attractive financially had to be assured if capable trial judges were to be retained and new judicial talent to be attracted. It seems to us that it is becoming increasingly necessary to construe Section 246 in a way which will enable the General Assembly to keep the salaries of Circuit Judges, and for that matter all constitutional officers, currently geared to the purchasing power of the dollar as compared to its purchasing power in 1949. This is not a precise process in the case of the judiciary because of the adequate pay provisions of the Constitution, and in any case consideration of tax differentials and possibly other factors might prove necessary to maintain the general living standards made possible by the constitutional dollar income in 1949.

Since the Gold Clause case (Norman v. Baltimore & O. R. Co.), 294 U.S. 240 et seq., 55 S.Ct. 407, 79 L.Ed. 885, the value of the dollar in purchasing power has been a controlling criterion rather than its official gold content so far as payment of bonds and similar obligations, bearing provisions requiring payment in gold coin of the United States equal to the standard of weight and fineness as of the date of the loan, is concerned. And in the realm of damage law we have said, "In considering a previous award as a guide for determining the propriety of a present verdict, the amount for purposes of comparison, must be adjusted so as to compensate for intervening changes in the value of money. Recognition of the increased cost of living or the impaired purchase power of the dollar must of necessity be considered. The value of the sum awarded must be measured not by the number of dollars, but by its comparative use in obtaining the necessities of life." J. C. Penney Company v. Livingston, Ky., 271 S.W.2d 906. The effects of two World Wars, a Korean War and a Cold War make many former conceptions of a dollar no longer pertinent in many fields of activity.

Let us see what the Legislature has done in the instant case as summarized in the brief of the appellees:

"The Consumers' Price Index for March 1962, taking 1949 as the base figure of 100, stands at 128.9. In other words, it takes $128.90 to buy what could be bought for $100.00 in 1949. We come, therefore, to the ratio— 128.9 is to 100 as X is to 8400. In this situation X would equal 10,827.60. The raise in salary provided by House Bill 65 (if it be considered simply as a raise in salary and not as the creation of a new job) is to $10,800.00. In other words, the legislature has interpreted 'adequate compensation' today at almost exactly the figure that would be arrived at if purchasing power and not depreciated currency is taken as the proper limit on salaries."

This is a clear instance of legislative care and responsibility.

As the determiner of adequate compensation the Legislature has the power to balance the consistency of Section 133 with Section 246 and to reach the rational conclusion that "adequate compensation" requires a reconsideration of Section 246. Two special courts have done exactly this in construing the provisions of Sections 112 and 133 in the light of Section 235 (forbidding a change in compensation during a term). See, Stone v. Pryor, 103 Ky. 645, 45 S.W. 1053, 1136; Perkins v. Sims, Ky., 350 S.W.2d 715. And the same result was reached by the regular Court in Wright v. Oates, Ky., 314 S.W.2d 952. The legislative interpretation of Section 246 as related largely to purchasing power is not only a rational construction to put on the section, but is the only construction that accords with a "living" rather than a dead Constitution. Particularly as to Judges has the Constitution directed an "adequate compensation." With this guide it is clear that Section 246 must be interpreted as a constitutional principle and not as a statute. As said by Judge (later Chief Justice) Vinson in Nueslin v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690: "* * * we must regard constitutional provisions as more generic and more organic than other law with which we deal." And as said by this Court in Meredith v. Kauffman, 293 Ky. 395, 169 S.W.2d 37:

> "The Constitution is concerned with substance and not with form and and its framers did not intend to forbid a common-sense application of its provisions."

■ The net result of our consideration is that the salary provisions of Section 246 of the Constitution may be interpreted and periodically applied to all constitutional officers in terms which will equate current salaries with the purchasing power of the dollar in 1949 when Section 246 was adopted. Furthermore, in the instance of the judiciary other factors also may be considered in establishing the adequate compensation directed by Sections 112 and 133 of the Constitution.

This Court will require Circuit Judges to fulfill the added duties imposed upon them by the instant legislation, but we uphold the payment of the additional salary upon the basis herein discussed.

The judgment is affirmed.

MONTGOMERY, J., not sitting.

BIRD, Judge (concurring).

The majority opinion holds that House Bill 65, making a Special Appellate Commissioner of each regular circuit judge, is valid. I agree with this conclusion but I cannot accept the reasoning of my colleagues in reaching the conclusion.

The majority opinion does all but eradicate the ink with which Section 246 of the Kentucky Constitution is written. I continue to adhere to my often expressed opinion that this is the prerogative of the people.

As I view House Bill 65, the General Assembly did three separate and distinct acts. First, it created at least sixty-five offices, to wit, Appellate Court Commissioners. Second, it filled each office with a regular circuit judge. Third, it set a uniform salary for the new commissioners.

As I construe the Act, each regular circuit judge is to hold two separate and distinct offices. The duties of one are strictly appellate for which the judge is to be paid $2400.00 per annum. The duties of the other office pertain to matters generally arising in a court of original jurisdiction for which he is to be paid not exceeding $8400.-00 per annum (Section 246 Kentucky Constitution) the payment of which is now authorized by KRS 64.498.

Under Section 235 of the Kentucky Constitution the salary of a public officer can-

**140**

not be changed during his term of office. Here, however, there is a completely new office created by statute and the duties thereunto attached are by the statute made coextensive with the Commonwealth. The new duties are so unrelated to the regular and general duties of a circuit judge that it is unnecessary to try to escape the limitations provided by Section 235. The judge has no extra duties as circuit judge. He has been given another job wholly unrelated and for which he is to receive additional compensation. There is no constitutional restriction upon the Legislature to authorize it. See Coleman v. Hurst, 226 Ky. 501, 11 S.W.2d 133; James v. Cammack, 139 Ky. 223, 129 S.W. 582. Whether as an officer whose duties are coextensive with the Commonwealth or as a Commissioner of the Court of Appeals, both of which are specifically mentioned in Section 246, the Legislature could properly fix the salary so that the aggregate amount would not exceed $12,000.00, the limit provided by Section 246. This was done by the Legislature and, without the majority opinion, the constitutional bars would not be torn asunder. There is no need in the matter before us to do violence to Section 246 with the adequate pay dissertation.

I have considered the question of compatibility. It is my conclusion that so long as the Special Commissioner is not assigned cases appealed from his own court the offices of Circuit Judge and Special Appellate Commissioner are not incompatible.

The wording of Section 246 makes it clear to me that in no event can the aggregate compensation of the Circuit Judge and Special Commissioner exceed $12,000.-00.

It is my conclusion that the act must be upheld but that the constitutional limitations should be preserved. The majority opinion does not respect the sanctity of the fundamental writ and for that reason I cannot agree. I do, however, concur in its basic conclusion.