COMMONWEALTH of Kentucky et al.,
Appellants,

v.

Virginia HESCH, Clerk of Circuit Court of
Campbell County, et al., Appellees.

FLOYD COUNTY, Kentucky, et al.,
Appellants,

v.

Henry C. HALE, Sheriff of Floyd County,
Appellee.

Court of Appeals of Kentucky.

June 28, 1965.

As Modified on Rehearing Oct. 29, 1965.

Robert Matthews, Atty. Gen., Hunter B. Whitesell, Frankfort, Charles Runyan, Asst. Atty. Gen., for the Commonwealth.

Barkley J. Sturgill, Prestonsburg, for Floyd County and others.

John Hopkins, Fred F. Bradley, Edward F. Prichard, Jr., Frankfort, George T. Muehlenkamp, Newport, James R. McGarry, Covington, David R. Reed, Paducah, William E. Scent, Reed & Scent, Louisville, for Virginia Hesch and others.

Combs & Rather, Lexington, Paul E. Hayes, Prestonsburg, for Henry C. Hale, Sheriff.

MILLIKEN, Judge.

These are appeals from judgments upholding the constitutionality of statutory salary increases for local constitutional officers in excess of the nominal $7,200 maximum allowed by Section 246 of the Constitution, and we have consolidated the cases on appeal. Before acceding to the legislative mandate directing payment of the salary increases, the State Commis-

363

sioner of Finance and other officials felt compelled to have the approval of this Court, and these cases are the result.

The 1964 regular session of the General Assembly enacted Senate Bill No. 84, (Chapter 109) granting salary increases to county clerks, sheriffs, circuit clerks, county judges and county jailers within the maximum limit of $9,600 "to be paid solely out of the statutory fees and salaries received * * * during the calendar year." Though ineptly worded, it is reasonably clear that the Act intends that the maximum compensation of $9,600 shall be paid, if the fees of the office, together with such salary as the fiscal court may authorize to be paid (but is not required to) under authority of KRS 64.720, will reach that amount. The questions presented here are whether the increase in the maximum compensation from $7,200, the amount stated in Section 246 of the Constitution, to $9,600, the maximum amount prescribed by the statute, is constitutional, and, secondly, whether the increases permitted by the statute may be paid during the current terms of office of the respective officers when Sections 161 and 235 of the Constitution prohibit changes in the salaries of officers during their terms of office.

█ In June, 1962, this Court took cognizance of what every housewife had known for a long time—that the purchasing power of the dollar had been steadily declining, and so we said in our opinion in Matthews v. Allen (1962), Ky., 360 S.W. 2d 135, a case which presaged the determination of the issues presented in the cases at bar, "The net result of our consideration is that the salary provisions of Section 246 of the Constitution may be interpreted and periodically applied to all constitutional officers in terms which will equate current salaries with the purchasing power of the dollar in 1949 when Section 246 was adopt-

ed." [1] This principle of construction accomplishes the dual purposes of Section 246; it preserves a reasonable ceiling on salaries and permits the payment of reasonable salaries, both equated with the 1949 purchasing power of the dollar.

█ When the 1964 General Assembly raised the salary maximums for the offices here involved it did so in conformity with that decision, for the Consumers' Price Index of March, 1964, disclosed that the purchasing power of the dollar had decreased approximately one-third since the adoption of Section 246 in 1949. The maximum salary increase granted by the General Assembly is exactly one-third.

█ We reaffirm our decision in Matthews v. Allen, above, because it expresses in current values the initial values which are the essence of Section 246 (the same as tax assessments are intended by Section 172 to express current values). We further conclude that the salary increases here involved do not violate the purpose of the constitutional provisions prohibiting changing compensation during current terms of office, for on the theory of construction we have adopted, the salaries of the various offices are merely being kept abreast of their initial value or purchasing power. The Commissioner of Finance and other officers shall authorize payment of the salary increases directed by the General Assembly.

The judgments are affirmed.

MONTGOMERY and HILL, JJ., dissenting.

MONTGOMERY, Judge (dissenting).

It is with extreme reluctance that I dissent from the majority opinion. The county officials should have their pay raised, but the proper way to do so is by amend-

---

1. Referred to by the American Judicature Society as "an historic decision * * * and Kentucky has provided a pattern for dealing with" a problem every government must face. Golden Jubilee issue of the Journal of the American Judicature Society (December, 1963), Vol. 47, Number 7, page 127.

ment or revision of Section 246 of the Kentucky Constitution as provided therein rather than by judicial fiat.

The majority opinion gives no constitutional authority for evasion of Section 246, which places a limitation on the compensation of public officers. The pertinent portion of the section follows:

"No public officer or employe except the Governor, shall receive as compensation per annum for official services * * * any amount in excess of the following sums: * * * all other public officers, Seven Thousand Two Hundred Dollars. * * *."

My views in support of the constitutional limitation are set forth in a dissent, concurred in by two other members of the Court, in Board of Education of Graves County v. DeWeese, Ky., 343 S.W.2d 598, where the section was evaded in a case involving the salary of a county school superintendent.

The holding of the majority in the present case is sought to be bottomed on the decision in Matthews v. Allen, Ky., 360 S.W.2d 135, in which it was held that Section 246 did not limit the salaries of circuit judges. I disqualified and did not sit in that case for personal reasons.

The decision in that case had two bases: One, the so-called "elastic dollar" theory, and the other, Section 133 of the Kentucky Constitution. Section 133 provides:

"The Judges of the Circuit Court shall, at stated times, receive for their services an adequate compensation to be fixed by law, which shall be equal and uniform throughout the State, so far as the same shall be paid out of the State Treasury."

In my opinion Section 133 afforded a constitutionally justifiable basis for the increase in compensation for circuit judges; otherwise, it would serve no purpose in the Constitution. See Kentucky Constitution, Section 112; Stone v. Pryor, 103 Ky. 645,

45 S.W. 1053, 1136; and Perkins v. Sims, Ky., 350 S.W.2d 715. But this section cannot be used as a basis for sustaining the majority opinion here because the officers involved are not circuit judges.

Therefore, the majority opinion is relegated to the "elastic dollar" basis for justification. It is sufficient to say, in my opinion, that no economic theory is justification for amending or evading a constitutional provision. The 1949 amendment to Section 246 came following a period of inflation after World War II, but there is nothing to indicate that the limitations therein were to be based on a fluctuating money standard. In the span of the experience of many of us, the buying power of the dollar has varied greatly. It has gone up; it has gone down. The majority opinion does not indicate whether the "elastic dollar" will contract in value as well as expand or the consequences of either action. Such a standard is too uncertain and defeats the whole principle of a monetary standard of values.

The irony of the situation is that such a decision should be reached when the constitutional processes of revision have been set in progress and will soon reach the stage when the people of the Commonwealth will be called upon to voice their sentiments in this regard. This is the system of government heretofore contemplated as the democratic process. Any other system of government can lead only to chaos and destruction of orderly government. If the Court of Appeals is to constitute itself as an all-wise super-legislature, then the Constitution Revision Assembly may just as well disband. Its services will no longer be needed.

As a strong believer in our Constitution, I feel that it is my humble duty to uphold it, whatever the consequences. For these reasons I cannot agree with the majority opinion.

HILL, J., concurs.