QUESTION: May the Legislature, through the customary procedures for the passage of bills into statutes, pass and cause to be effective a law allowing for a cost-of-living increase in the homestead exemption for the elderly (those who qualify for the second $5,000 exemption for homestead)?
SUMMARY: The Legislature does not have the power to define the $10,000 limitation on the homestead exemption for the elderly in s. 6, Art. VII, State Const., in such a way that would tie it to cost-of-living increases. Although this question is ultimately for the judiciary to resolve, my opinion is that your question must be answered in the negative for the reasons discussed below. Section 6, Art. VII, State Const., provides in pertinent part: (a) Every person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner, or another legally or naturally dependent upon the owner, shall be exempt from taxation thereon, except assessments for special benefits, up to the assessed valuation of five thousand dollars . . . . * * * * * (c) By general law and subject to conditions specified therein, the exemption may be increased up to an amount not exceeding ten thousand dollars of the assessed value of the real estate if the owner has attained age sixty-five . . . . Section 196.031, F. S., increased the exemption to $10,000 of assessed valuation if the owner has attained age sixty-five, subject to the condition that said owner must be a permanent resident of this state for 5 consecutive years prior to claiming the exemption. The question presented is whether the Legislature can pass a law defining the $10,000 limitation in the Constitution as $10,000 in terms of the purchasing power of the dollar in the year in which the $10,000 provision was placed in the Constitution. The $10,000 amount would be adjusted each year or every 2 years to conform to Consumer Price Index figures which reflect cost-of-living adjustments. At any time it wished, the Legislature could increase by statute the homestead exemption allowed to the elderly up to the maximum amount stated in the Constitution as adjusted in relation to the Consumer Price Index. The issue is whether the Legislature has the power to so define the $10,000 amount. After a review of the cases dealing with constitutional principles and legislative powers, it would appear that the Legislature does not have the power to give a definition to the $10,000 amount which would have the effect of increasing the maximum amount allowed by the Constitution.
It is well settled that the Florida Constitution is not a grant of, but a limitation on, legislative power. Gaulden v. Kirk,47 So.2d 567 (Fla. 1950). Where the Constitution prescribes the manner of doing an act or ascertaining a fact, the manner is exclusive, and it is beyond the power of the Legislature to enact a statute that would defeat the purpose of the Constitution. State ex rel. Church v. Yeats, 77 So. 262 (Fla. 1917). That which is implied in the Constitution is as much a part of it and is as effective as that which is expressed. State ex rel. Nuveen v. Greer, 102 So. 739 (Fla. 1924). Express or implied provisions of the Constitution cannot be altered, contracted, or enlarged by legislative enactment. Sparkman v. State ex rel. Scott,58 So.2d 431 (Fla. 1952). The fundamental object in construing a constitutional provision is to ascertain and give effect to the intentions of the framers or adopters. State ex rel. Dade County v. Dickinson, 230 So.2d 130 (Fla. 1969). Constitutional provisions are to be interpreted in accordance with their plain and obvious meaning, unless it is very plain or absolutely certain that the language employed was not intended in its natural signification. Schooley v. Judd, 149 So.2d 587 (Fla. 1963). A legislative construction of a constitutional provision will not be permitted to overturn and render nugatory a clear provision of the Constitution. Amos v. Moseley, 77 So. 619 (Fla. 1917). Constitutional provisions which are clear and explicit in term, or made so by the history of their adoption and by longcontinued application and recognition in governmental proceedings, cannot be given a meaning by the Legislature that conflicts with the terms of such provisions. State ex rel. West v. Butler, 69 So. 771 (Fla. 1915). See 6 Fla. Jur. Constitutional Law ss. 23-29, pp. 288- 292. The constitutional principles and cases cited above limit generally the Legislature's power to define constitutional terms. Cases which deal specifically with exemptions in the Constitution similarly discuss the implied prohibition against tampering with the provisions in the Constitution. It is stated in L. Maxcy, Inc. v. Federal Land Bank of Columbia, 150 So. 248, 250 (Fla. 1933) that: The principle has been more than once affirmed in this state that the Constitution must be construed as a limitation upon the power of the Legislature to provide for the exemption from taxation of any classes of property except those particularly mentioned classes specified in the organic law itself. The court in Steuart v. State ex rel. Dolcimascolo, 161 So. 378 (Fla. 1935), while defining the word "citizen" in the homestead exemption provision in the Constitution, stated that neither the judicial, legislative, nor executive departments have the authority to amend, add to, detract from, or alter the constitutional provision exempting homesteads from taxation. Defining the term $10,000 in the manner suggested by the proposed legislation would have the effect of increasing the limitation amount in the Constitution. The class of the elderly would be entitled to additional exemption. This would appear to be a tampering with the homestead exemption provisions of the Constitution which would be prohibited. Several Florida cases deal with situations where the Legislature has validly defined constitutional terms in regard to exemptions. The test applied for measuring the legislation against constitutional restraints was whether there was a reasonable relationship between the legislation and the purpose of the constitutional provision relating to exemptions. In Jasper v. Mease Manor, Inc., 208 So.2d 821 (Fla. 1968), the court dealt with the legislative application of the word "charitable" in the constitutional exemption provisions. In Ammerman v. Markham,222 So.2d 423 (Fla. 1969), the court dealt with the legislative definition of "real property" in relation to constitutional homestead exemption provisions. The words "charitable" and "real property" are words which may require defining by the Legislature in order to establish classes of exemptions. The term "$10,000" is purely a limitation on the power of the Legislature. The term has a clear and precise meaning and does not require defining by the Legislature. The maxim expressio unius est exclusio alterius must also be considered in regard to the proposed legislation. This maxim that the express mention of one thing implies the exclusion of another has been applied to constitutional provisions. The court in In Re Advisory Opinion of the Governor Civil Rights,306 So.2d 520, 523 (Fla. 1975), quoted from another case in regard to this maxim: The principle is well established that where the Constitution expressly provides the manner of doing a thing, it impliedly forbids it being done in a substantially different manner. Even though the Constitution does not in terms prohibit the doing of a thing in another manner, the fact that it has prescribed the manner in which the thing shall be done is itself a prohibition against a different manner of doing it. . . . When the maxim is applied to the question presented here, it would appear that, since the Constitution provides for a $10,000 limitation, it excludes a $10,000 limitation as adjusted by the Consumer Price Index. The history of the homestead exemption provision in the Constitution supports the assertion that the Legislature does not have the authority to alter the ordinary meaning of the $10,000 limitation. The homestead tax exemption originally came into the Florida Constitution as the result of a 1933 constitutional amendment. The original limitation was $5,000, which amount has not been changed over the past few decades. Obviously, the value of the dollar has decreased drastically since 1933, yet the $5,000 limitation was readopted in the 1968 Constitution. The increase to $10,000 for the elderly is in effect an additional $5,000 exemption. These amounts must be given their ordinary meaning, since there is nothing to indicate in the constitutional history that the amounts were to mean anything other than the stated figures. It has been brought to my attention that the Kentucky courts have recently considered the issue presented by the legislation proposed here and have concluded that the Kentucky Legislature has the authority to define the $6,500 exemption provided for in s. 170 of the Kentucky Constitution in terms of the purchasing value of the dollar in a given year. Section 170 is worded substantially the same as s. 6, Art. 7, Fla. Const.: There shall be exempt from taxation . . . a homestead, which is a single unit residential property maintained by the owner who is sixty-five years of age or older, as his personal residence, up to the assessed valuation of sixtyfive hundred dollars. . . . The Kentucky Legislature in Ch. 314, Acts of 1974, specifically defined the term $6,500 in the following way: ". . . [T]he $6,500 exemption shall be construed to mean $6,500 in terms of the purchasing power of the dollar in 1972. Every two (2) years thereafter, if the cost of living index of the United States Department of Labor has changed as much as one (1) per cent, the maximum exemption shall be adjusted accordingly." In Lester v. City of Fort Thomas, Ky., et al., 531 S.W.2d 490 (Ky. 1975), the Court of Appeals of Kentucky held that the amendments to KRS 132.810(1) and (2)(c) as enacted by Ch. 314, Acts of 1974, are valid. The court concluded that "the dollar-value principle of Mathews v. Allen, 360 S.W.2d 135 (Ky. 1962), Commonwealth v. Hesch, 395 S.W.2d 362 (Ky. 1965), and Sarakatsannis v. Baker,488 S.W.2d 683 (Ky. 1972), applies to the $6,500 limit of the homestead exemption allowed to persons 65 years of age or older by Constitution, Section 170." The three decisions used by the court in Lester, supra, to support its conclusion all deal with constitutional salary provisions. In Mathews v. Allen, supra, the Kentucky Court of Appeals emphasized that s. 133 of the Constitution provides that judges shall receive "adequate compensation" for their services. The court further stated that: . . . [W]hen the nominal dollar salary becomes of such reduced purchasing power in relation to the cost of living that it no longer enables its recipient to maintain the standard of living afforded by the same salary in 1949 [the year that Section 246 was amended to provide a $12,000 cap for judges], it is necessarily inadequate within the meaning of Section 133. The sections can be truthfully harmonized only through equating "dollars" with what they will do in the market place. The court also discussed the legislative history of the 1949 amendment to s. 246: . . . [I]t was done in order to afford the Courts just or adequate compensation when it was thought that the $5,000 limitation of original Section 246 precluded payment of it. . . . [T]his background . . . indicates [that] national averages were considered in setting constitutional limits in 1949 and that it was not the intention of the founding fathers or supporters of the 1949 amendment to Section 246 in 1949 to doom public officers to the strapped financial state a waning dollar value so easily can produce. Commonwealth v. Hesch, supra, and Sarakatsannis v. Baker, supra, also dealt with salary increases in the face of a constitutional or statutory dollar limit and used rationales similar to Mathews v. Allen, supra, to justify defining the constitutional dollar limits in terms of current dollar value. It should be noted that in all these cases there is a legislative history of salary increases to keep pace with the rise in the cost of living. There is additional justification in construing the salary limitations according to the dollar-value principle when the constitutional provision for adequate compensation for constitutional officers is taken into account. The analogy drawn by the Court of Appeals in Lester, supra, between constitutional salary limitation and the constitutional homestead exemption limitation can be questioned. The $6,500 limitation for the elderly was adopted by the voters on November 2, 1971, and added to the Kentucky Constitution. A proposed amendment in 1974 contained the same $6,500 limit with no mention of the decrease in the value of the dollar between 1971-1974. What little legislative history there is concerning the Kentucky homestead exemption indicates that the $6,500 was intended to mean $6,500. Additionally, there is no constitutional provision analogous to s. 133 which would guarantee the elderly "adequate exemptions." The Attorney General of Kentucky adopted a similar view of the proper construction of s. 170 in AGO 073-371 in which he stated that: There is no authority in the constitution, either directly or implied, to increase the $6,500 exemption provided for the assessed value of homesteads owned by persons 65 years of age or older and the only method by which such exemption could be increased would be by amending the constitution. Although the Kentucky judicial decisions are entitled to great respect by the courts of sister states, an analysis of Florida decisions and history would indicate that the Kentucky decision in Lester, supra, would not be followed by the Florida courts, should the question arise. Since I have determined that the proposed legislation would run counter to the constitutional provisions, it is unnecessary to discuss issues which might arise in the drafting of such legislation. Some of these issues would be equal protection of the laws, prospective application of the statutes, and delegation of legislative authority to the body compiling the Consumer Price Index. It should be pointed out that what is desired by the proposed legislation could be accomplished by a constitutional amendment.