222 So.2d 423 (1969)
Mildred AMMERMAN, Frank G. Moore, Robert C. McKeand, Jack Cohen, Barney Simmons, Archie E. Wight, and William H. Brodersen, Individually and On Behalf of a Class of Persons Similarly Situated As Defined Herein, Appellants,
v.
William MARKHAM, As Tax Assessor for Broward County, Florida, and Fred O. Dickinson, Jr., Comptroller of the State of Florida, Appellees.
No. 38445.
Supreme Court of Florida.
May 7, 1969.
*424 Louis W. Adams, of Adams, Adams & Nagel, Fort Lauderdale, and Gerald T. Wetherington, of Farrell & Wetherington, Miami, for appellants.
R. Regis Reasbeck, of Reasbeck & Fegers, Hollywood, and Gaylord A. Wood, Jr., of Rogers, Morris & Ziegler, Fort Lauderdale, for William Markham, as Tax Assessor for Broward County.
John U. Lloyd, County Atty., and Stephen A. Tillotson, Asst. County Atty., for Fred O. Dickinson, Jr., Comptroller of the State of Florida.
ADKINS, Justice.
This is a direct appeal from the Circuit Court of Broward County which held that Ch. 67-339, Laws of Florida, is unconstitutional under the Fla. Const. 1885 to the extent that it purports to grant homestead exemption to owners of condominiums and cooperative apartments beginning January 1, 1969.
Appellants were the plaintiffs below and appellees were the defendants below.
The plaintiffs filed a class suit on behalf of themselves and on behalf of all similarly situated owners of condominium parcels and cooperative apartments in Broward County, Florida, permanently residing on said property on January 1, 1969 and thereafter with the good faith intention of making same their permanent homes. The suit was for declaratory judgment and supplemental relief. Plaintiffs sought a judicial declaration that they were entitled to a $5,000.00 homestead tax exemption for the year 1969 on their individual condominium parcels and cooperative apartments and an order directing the defendant tax assessor to accept their applications for homestead exemption. The lower court held that plaintiffs were not entitled to homestead exemption as granted by the Fla. Const. 1968 until the tax year commencing January 1, 1970; that Ch. 67-339 conflicted with the Fla. Const. 1885, F.S.A., which was in effect on January 1, 1969 insofar as the law purported to grant homestead exemption to owners of cooperative and condominium apartments for the year beginning January 1, 1969.
Under Florida Statutes January 1st of the tax year is the date on which property is to be valued, the date on which the inchoate tax lien arises and the date on which certain facts must exist to entitle taxpayers to the various tax exemptions allowed by law.
Art. X, § 7, Fla. Const. 1885 contains the following provisions:
"Every person who has the legal title or beneficial title in equity to real property in this state and who resides thereon and in good faith makes the same his or her permanent home, or the permanent home of another or others legally or naturally dependent upon said person, shall be entitled to an exemption from all taxation, except for assessments for *425 special benefits, up to the assessed valuation of Five Thousand Dollars on said home and contiguous real property, as defined in Article 10, Section 1, of the Constitution, * * * but no such exemption of more than Five Thousand Dollars shall be allowed to any one person or on any one dwelling house, nor shall the amount of the exemption allowed any person exceed the proportionate assessed valuation based on the interest owned by such person. The Legislature may prescribe appropriate and reasonable laws regulating the manner of establishing the right to said exemption." (Emphasis added.)
Sec. 6, Art. X, Fla. Const. 1885 provides that the Legislature shall enact such laws as may be necessary to enforce the provisions of the article relating to homestead and exemptions.
Ch. 67-339 amended Fla. Stat., §§ 192.12 and 192.13, F.S.A. so as to provide homestead tax exemption to each owner-occupied condominium parcel and on each apartment occupied by a tenant-stockholder or member of a cooperative apartment corporation (this statute is included in official Fla. Stat. 1967, §§ 192.12, 192.13, F.S.A.). Sec. 3, of Ch. 67-339, provides as follows:
"This act shall take effect on the first January 1st, after the house joint resolution amending section 7 of Article X of the constitution of Florida, which grants a homestead exemption up to five thousand dollars ($5,000.00) on each owner-occupied condominium parcel and on each apartment occupied by tenant-stockholder or member in the building owned by a cooperative apartment corporation, is approved by a majority of the qualified electors voting in an election or after a revised constitution of Florida is approved by a majority of the qualified electors voting in an election, which grants a homestead exemption up to five thousand dollars ($5,000.00) on each owner-occupied condominium parcel and on each apartment occupied by tenant-stockholder or member in the building owned by a cooperative apartment corporation."
The revised Constitution of 1968, Art. VII, § 6 of which grants homestead tax exemption to the plaintiffs' class was approved "by a majority of the qualified electors voting in an election" which was held in November, 1968. The Fla. Const. 1968 became effective on January 7, 1969, six days after the exemption status of the property was determined, and, therefore, does not apply to this case.
The sole question is whether Ch. 67-339 could constitutionally extend the provisions of the Fla. Const. 1885 to the owners of cooperative and condominium apartments.
Art. X, § 7, Fla. Const. 1885 extends the homestead exemption from taxation to every person who has the legal title or beneficial title in equity to real property in this State, under the conditions specified therein.
At common law the term "real property" was deemed coextensive with lands, tenements, and hereditaments, corporeal and incorporeal. See Thompson on Real Property (1964), Vol. 1, § 22, p. 93. The meaning and application of the term "real property" are generally declared by statute, and the term may be defined in different statutes or for different purposes. See 73 C.J.S. Property § 2, p. 152. For example, Fla. Stat., § 421.03(12), F.S.A. defines "real property" for the purposes of the housing authorities law; Fla. Stat., § 475.01(11), F.S.A. defines "real property" for the purposes of the real estate license law; Fla. Stat., § 713.01(14), F.S.A. defines "real property" for the purposes of the mechanics lien law. These definitions vary, because the statutory definitions usually apply only to the term as used in the particular statutory provision.
In Overstreet v. Tubin, (Fla. 1951), 53 So.2d 913, this Court defined "dwelling house" as used in the Fla. Const. 1885 as *426 "the whole structure of a multiple dwelling house, rather than each separate unit * * *." This decision dealt with a duplex and granted the resident of each side a $2,500.00 homestead exemption.
In Gautier v. State ex rel. Safra (Fla. App. 1961), 127 So.2d 683, the Third District Court of Appeal held that the definition of "dwelling house" set by this Court in Overstreet v. Tubin, supra, also applied to multi-unit condominiums.
The Legislature by enacting Ch. 67-339 intended to and did include cooperative and condominium apartments within the meaning of the terms "real property" and "dwelling house," as used in the Constitution.
In Jasper v. Mease Manor, Inc. (Fla. 1968), 208 So.2d 821, the Court considered a statute defining the word "charitable" as used in Fla. Const. 1885, Art. IX, § 1, limiting tax exemption statutes to those properties used for "municipal, education, literary, scientific, religious or charitable purposes." The statute in question included within the exemption homes operated for aged persons without regard to such persons' financial dependence or independence. Earlier definitions by the Court of the word "charitable" as used in the Constitution were more limited. This Court, in sustaining the validity of the legislative act extending the definition, said:
"The test for measuring such legislation against the constitutional restraints must be that of reasonable relationship between the specifically described exemption and one of the purposes which the Constitution requires to be served. The problem therefore differs significantly from that which has been presented in cases requiring judicial definition of the constitutional concepts in the absence of an explicit statute. Application in those cases of a more limited definition of charitable use, in the primary sense of relief for the indigent or helpless, does not require or justify rejection of the current statute on constitutional grounds." (Emphasis added.)
The framers of the Fla. Const. of 1885 had no concept of the condominium ownership of property. The Legislature modified the frozen common law concept of real property ownership and, in 1963, enacted a Condominium Act defining a condominium parcel as "a separate parcel of real property, the ownership of which may be in fee simple, or any other estate in real property recognized by law." See Fla. Stat., § 711.04(1), F.S.A. Moreover, the Legislature has recognized the owners of condominium parcels and cooperative apartments as freeholders. Fla. Stat., § 97.021(7), F.S.A.
This legislative approval of individual ownership of units in a multiple-dwelling structure bears a reasonable relationship to the purposes of Art. X, § 7, Fla. Const. 1885. Ch. 67-339 is a valid legislative definition of "real property" and "dwelling house," as used in the Constitution, so as to extend homestead tax exemption benefits to owners of condominium and cooperative apartments beginning January 1, 1969.
The intent of the Legislature was to provide homestead exemption for these owners during the year 1969 if the proposed Constitution was adopted in the general election of 1968. The fact that the statute would take effect upon the happening of this contingency or future event is immaterial. See 22 F.L.P. Statutes, § 108.
In Town of San Mateo City v. State ex rel. Landis, 117 Fla. 546, 158 So. 112 (1934), the Court held that a statute duly enacted may, by the statute itself, be made to become operative upon the happening of a lawful contingency such as a vote of the electors or property owners of an appropriate governmental entity. In a concurring opinion, Chief Justice Davis said:
"Which then are the conditions which the Legislature may attach to laws as valid conditions to their becoming effective? I think the answer to this proposition *427 is to be found in the suggestion that whatever the Legislature can properly take into consideration as a valid reason for enacting or refusing to enact a law as a matter of legislative policy can be written into the law when it is passed as a condition precedent to its becoming effective."
In Gaulden v. Kirk (Fla. 1950), 47 So.2d 567, the Court said:
"The universal rule is that, `In the absence of constitutional or statutory provisions to the contrary, statutes may become effective on the happening of certain conditions or contingencies specified in the act, or implied therefrom.' * * *
"The contingency may be the enactment or approval of another enactment."
The fact that Ch. 67-339 did not take effect until the happening of the contingency described in Section 3 of the Act, does not affect its validity.
The final judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.
ERVIN, C.J., and DREW, CARLTON and BOYD, JJ., concur.